## ST. LOUIS, CAPE GIRARDEAU AND FORT SMITH RAILWAY COMPANY *v.* MISSOURI *ex rel.* MERRIAM.

ERROR TO THE SUPREME COURT OF THE STATE OF MISSOURI.

No. 751. Submitted January 14, 1895. — Decided March 4, 1895.

The granting by the Supreme Court of a State of a writ of prohibition directed to an inferior court directing it to abstain from further proceedings in an action pending in it, and to a receiver of a railroad appointed by that court, directing him to turn over the property to a receiver appointed by another court of the State, presents no Federal question for the decision of this court.

MOTION to dismiss. On the 20th day of July, 1893, in the Supreme Court of the State of Missouri, Edwin G. Merriam filed a petition for a writ of prohibition. In said petition the relator set forth that the St. Louis, Cape Girardeau and Fort Smith Railway Company was a corporation organized under the laws of the State of Missouri; that it had made on September 1, 1881, a mortgage on part of its railroad to one Leo Doyle, as trustee, to secure an issue of bonds amounting to $100,000; that on July 18, 1881, the same company had made to Leo Doyle, as trustee, a mortgage on another part of its road to secure an issue of $170,000 of its bonds. The petition also alleged that the relator was the holder of $27,000 of the bonds secured by the mortgage of September 1, 1881, and $49,200 of the bonds secured by the mortgage of July 18, 1881.

The petition further stated that default had been made in the payment of interest on said bonds, and that, after such default, the relator on the 3d day of March, 1893, filed in the circuit court of Stoddard County a bill of complaint in behalf of himself and all others similarly situated, against the said railway company, said Leo Doyle, trustee, and certain junior incumbrancers, and asked for the appointment of a receiver, and for a decree of sequestration and foreclosure, and other relief. The petition further alleged that, on the presentation of said bill of foreclosure on the 3d day of March, 1893, the circuit court of Stoddard County appointed one Eli Klotz as receiver, and authorized him to take possession of the railroad and property of the said railway company and manage and operate the same.

The petition further stated that on March 4, 1893, a pretended suit was instituted in the name of the said St. Louis, Cape Girardeau and Fort Smith Railway Company in another court, the Cape Girardeau court of common pleas; that such court appointed Louis Houck, the president of the railway company, and the owner of a majority of its stock, receiver of the said company's road and property; and that at the time of the filing of the petition he held possession as such receiver.

The petition further alleged that in the suit so instituted in the circuit court of Stoddard County process had been duly issued and served upon the defendant railway company on the

8th day of March, 1893, and upon Leo Doyle on or about the 9th day of March, 1893. The petition then set forth certain proceedings in the said circuit court of Stoddard County, in which George Houck, a brother of Louis Houck, was, on March 6, 1893, temporarily appointed judge in place of John G. Wear, who was prevented by sickness from attending court, and that said George Houck, as said judge, made an order early on the 13th day of March, 1893, discharging said Eli Klotz as receiver; and that afterwards on the same day the said John G. Wear reconvened said court and reappointed and confirmed the said Klotz as receiver, and that subsequently, on the 24th day of July, 1893, the said Judge John G. Wear again reappointed and confirmed the said Eli Klotz as receiver. The petition further stated that the said Leo Doyle, in disregard of his duties as trustee in the said mortgages, acted with the said railway company and with the said Louis Houck, and was represented in said suits by counsel employed at the instance of said Houck.

The petition further averred that the Cape Girardeau court of common pleas was about to issue receiver's certificates to the amount of $250,000, and to make them a lien on the property of the company prior to the lien of the mortgages securing the bonds held by the relator.

As relief the petition asked that a writ of prohibition should issue, directed to Alexander Ross, judge of the Cape Girardeau court of common pleas, and the other respondents, prohibiting him and them from pursuing and holding the pleas aforesaid, and from taking any further cognizance of the said suit before them touching the premises, and directing said court of common pleas to surrender to the proper jurisdiction of the circuit court of Stoddard County the said property of the said railway company. The record discloses that the said judge of the Cape Girardeau court of common pleas, the railway company, Louis Houck, Edward Hiddon, the Mercantile Trust Company, and Leo Doyle filed answers or returns to said petition, and that there was filed a stipulation that certain facts might be considered as proved and so treated by the court.

On December 4, 1893, the Supreme Court, after hearing,

granted the writ of prohibition, and the writ was accordingly issued commanding the Cape Girardeau court of common pleas to cease from entertaining any further pleas or taking any further action in said so-called suit, entitled the " St. Louis, Cape Girardeau and Ft. Smith Railway Company against Leo Doyle and others," in said court, and that the said railway company and the said Houck, as president thereof, as well as receiver thereof, and the other respondents, cease from further prosecuting pleas therein.  Said writ also directed the said Louis Houck to turn over all the property of said railway company that had come into his hands as receiver *de facto* thereof, under the orders of the Cape Girardeau court of common pleas, to the receiver *de jure* thereof, who had been or might be appointed by the circuit court of Stoddard County, in which the suit of the said relator was pending, and that he account therefor as such receiver, under the supervision of the said circuit court of Stoddard County.

The respondents filed a petition for rehearing, in which they set forth, among other things, that part of the writ of prohibition which commanded Houck to turn over the property of the railway company which had come into his hands as receiver under the appointment by the Cape Girardeau court of common pleas to the receiver appointed by the circuit court of Stoddard County, and averred, in respect to the same, that " that part of the order above quoted is in violation of article five of the amendments of the Constitution of the United States, which provides that no person shall ' be deprived of life, liberty, or property, without due process of law,' and of the provisions of the first section of the Fourteenth Amendment of the Constitution of the United States, which provides that no State shall ' deprive any person of life, liberty, or property without the due process of law, nor deny to any person within its jurisdiction the equal protection of the laws.' "  The motion for rehearing was denied, and to the judgment granting the writ of prohibition a writ of error was allowed.

*Mr. John F. Dillon, Mr. W. S. Pierce,* and *Mr. H. Hubbard* for the motion.

*Mr. John W. Noble* and *Mr. M. R. Smith* opposing.

MR. JUSTICE SHIRAS delivered the opinion of the court.

This case was submitted on a motion to dismiss the writ of error herein, on the ground that no Federal question was raised in the Supreme Court of Missouri, and that, therefore, we have no jurisdiction to review the judgment of that court.

It is claimed that none of the pleadings in the Supreme Court of Missouri, nor the agreed statement of facts, raised any Federal question. It is admitted that, in the answer of the railway company to the petition for the writ of prohibition, it was averred "that any action by said judge of the circuit court of Stoddard County, or by said court itself attempting to seize out of the possession of this respondent under either of said divisional mortgages, all of said railroads, or any other part thereof, than that expressly named in said divisional mortgages, was and is and must be against the express provisions of both the constitution of Missouri and the Constitution of the United States, providing that no person shall be deprived of property without due process of law, and it is against the express law of the land;" and that, in the answer of Louis Houck, it was averred, "that the relator has no lien upon any part of the railroad beyond or west of Lakeville, and that his efforts to cause and compel this court or the circuit court of Stoddard County to take possession of any part of it beyond Lakeville is in violation of the Constitution of this State and of the United States, and of the law of the land, all of which guarantee that no property shall be taken except by due process of law." But it is said that, so far as Louis Houck is concerned, his answer is immaterial, because he does not appear as a plaintiff in error in this court, and that such part of the answer of the railway company as avers that the action of the judge of the circuit court will be against the Constitution of the United States was stricken out by the court; and as no objection was made or exception taken thereto the answer of the railway company does not raise any Federal question on the record.

On the other side, it is contended that it does clearly appear from the record that the provisions of the Constitution of the United States were relied on by the respondents, and that the questions thus raised were decided against them. It is argued that, even if this court will not take notice of the contents of the petition for a rehearing, in which the protection of the Constitution of the United States was in terms invoked, yet, that, as well by the recitals in the opinion as by the said averments in the answers of the railway company and of Houck, it affirmatively appears that the Federal questions were raised, and that no formal objection or exception to the action of the court in striking out those averments was necessary.

We do not think it necessary to narrowly inquire whether the record formally discloses that the respondents relied upon and pleaded rights under the Constitution of the United States, because we are of opinion that even if it be conceded that the respondents did, in form, invoke the provisions of the Federal Constitution, yet that no Federal question was really raised. The bare averment in the answers of supposed infringements in the proceedings of rights possessed by the respondents under the Constitution of the United States will not alone suffice. As was said in *New Orleans* v. *New Orleans Waterworks*, 142 U. S. 79: "While there is in the . . . answer of the city a formal averment that the ordinance impaired the obligation of a contract arising out of the act of 1877, which entitled the city to a supply of water free from charge, the bare averment of a Federal question is not, in all cases, sufficient. It must not be wholly without foundation. There must be at least color of ground for such averment, otherwise a Federal question might be set up in almost any case, and the jurisdiction of this court invoked simply for the purpose of delay." And in *Hamblin* v. *Western Land Company*, 147 U. S. 531, 532, where the foregoing opinion was quoted with approval, it was said: "A real and not a fictitious Federal question is essential to the jurisdiction of this court over the judgments of state courts."

We think that the Supreme Court of Missouri, in granting the writ of prohibition as prayed for, passed upon and decided

·no question arising under the laws or Constitution of the United States.

Whether, under the state constitution and laws, the Supreme Court of Missouri possessed the power to grant a writ of prohibition directed to one of the subordinate courts of that State, and what were the legal scope and effect of the writ when granted, were questions for that court to decide, and its judgment in those particulars is not subject to our revision.

The mandatory portion of the writ as granted, commanding the receiver appointed by one state court to turn over the property in his hands belonging to the defendant corporation to the receiver appointed by another did not operate to take away from the defendant its property and bestow it upon a third person. The title to its property continued in the company as before, and that title was no more disturbed or impaired by the judicial order establishing the right of custody to belong to one of two contending receivers, than it was by the original order appointing a receiver. That, in a foreclosure suit, to appoint a receiver is to deprive the defendant of its property within the meaning of the Constitution of the United States, is a novel proposition, and does not, in our view, raise a real, as distinguished from a fictitious, Federal question.

If it be questionable, which we do not admit, whether a receiver can be validly appointed for an entire railroad at the suit of a creditor holding bonds secured by a mortgage whose lien is restricted to part only of the road, that also, in the present case, was a question for the state court to decide, and we cannot be called upon to answer it.

We cannot agree with the contention so earnestly made on behalf of the plaintiff in error, that the Supreme Court of Missouri, by the judgment complained of, adjudicated or passed upon any substantial right of property or dictated in advance to the circuit court of Stoddard County how that court should deal with the rights and claims of the parties before it. As we understand the action of the Supreme Court, it only decided that, as between the conflicting claims of two inferior courts to exercise jurisdiction over the railroad and

property of an insolvent railroad company, the court whose jurisdiction first attached was the proper one in which the litigation should proceed. Such a decision would seem to comport with well-settled and orderly principles of procedure.

At all events, we are unable to descry, in the record before us, any denial by the Supreme Court of Missouri of any rights of the plaintiff in error under the Constitution or laws of the United States, and the writ of error is accordingly

*Dismissed.*