THE PEOPLE *ex rel.* TYRONE C. FAHNER, Attorney General of Illinois, Plaintiff-Appellee, *v.* COMMUNITY HOSPITAL OF EVANSTON *et al.*, Defendants.—(COMMUNITY HOSPITAL OF EVANSTON, Defendant-Appellant; MORGAN, WHITESIDE, BLOCK AND COMPANY, INC., Intervening Defendant-Appellee and Cross-Appellant.)

First District (5th Division) Nos. 81—342, 81—1929, 81—2028, 81—2151 cons.

Opinion filed August 20, 1982.—Rehearing denied October 7, 1982.

1052

Leo E. Holt, of Harvey, and Raymond D. Pijon and Joshua Sachs, both of Chicago, for appellant Community Hospital of Evanston.

Tyrone C. Fahner, Attorney General, of Springfield (Patricia Rosen, Assistant Attorney General, of counsel), for appellee.

Robert W. Berliner, Jr., Jill Ann Coleman, and Marilyn Klawiter, all of Levy and Erens, of Chicago, for appellee Morgan, Whiteside, Block and Company, Inc.

JUSTICE MEJDA delivered the opinion of the court:

These consolidated appeals stem from the appointment of a receiver for defendant Community Hospital of Evanston (Community) and the entry of a preliminary injunction by the trial court, pursuant to a complaint brought by the Attorney General. Community and intervening defendant Morgan, Whiteside, Block and Company, Inc. (Morgan), appeal.

Community raises the following issues: (1) whether the court properly denied Community's motion to dismiss the complaint; (2) whether the entry of the preliminary injunction and the appointment of the receiver and other relief granted by the trial court were an abuse of discretion; (3) whether the orders of the court subsequent to the entry of the preliminary injunction denied Community due process of law; and (4) whether Morgan is barred as a matter of law from enforcing its finder's fees in Illinois courts.

Morgan also raises a number of issues: (1) whether the complaint states a cause of action relative to Morgan and adequately supports the injunction prohibiting payment of Morgan's fees; (2) whether the court properly ordered that the $150,000 held in escrow pass to the receiver; (3) whether Morgan is entitled to damages and attorney fees pursuant to section 12 of the Injunction Act (Ill. Rev. Stat. 1979, ch. 69, par. 12), because of the preliminary injunction; (4) whether Morgan is entitled to damages and attorney fees pursuant to section 1 of "An Act concerning the appointment and discharge of receivers" (Ill. Rev. Stat. 1979, ch. 110, par. 407), because of the receiver's appointed control over the $150,000 in escrow; and (5) whether the trial court should have entered judgment for Morgan in the amount of $150,000 rather than $100,000.

In August 1980 Gilbert Bailey, chairman of the board of Community, sent a letter to Leo F. Block, Morgan's chairman, agreeing to retain Morgan to identify on a nonexclusive basis a viable purchaser of Community. By the terms of the agreement Morgan's fee, payable upon closing, was " *** five (5%) percent of the first $1,000,000 and ten (10%) percent over $1,000,000." Block contacted Bernard Lachner, president of Evanston Hospital, to see if Evanston would be in-

terested in purchasing Community. After Evanston's board rejected the structure of the acquisition proposal suggested by Block in Community's behalf, an "Acquisition Agreement" between the parties was reached which called for Evanston to purchase substantially all of Community's assets for $2,000,000. According to the terms of the escrow agreement also concluded at this time, the purchase price and the documents necessary for closing were to be deposited into an escrow account with Chicago Title and Trust as escrowee. On the closing date the escrowee was directed to pay from the escrow funds on deposit certain costs and fees incurred in conjunction with the sale; to pay Morgan's commission of $150,000; to transfer $500,000 to another bank for deposit into "Evanston Hospital Pavilion Special Fund," an account established by Evanston for the benefit of any health care facility operated by Evanston on the real estate; and to pay the balance of the remaining funds to Community.

On December 10, 1980, the Attorney General filed a seven-count complaint against Community, its directors, and Chicago Title and Trust Company, as escrowee, alleging violations of "An Act to regulate solicitation and collection of funds for charitable purposes ***" (Ill. Rev. Stat. 1979, ch. 23, par. 5101 *et seq.*) (hereinafter Charitable Solicitations Act) and the General Not for Profit Corporation Act (Ill. Rev. Stat. 1979, ch. 32, par. 163a *et seq.*) (hereinafter the Not for Profit Corporation Act), the Trusts and Trustees Act (Ill. Rev. Stat. 1979, ch. 148, par. 101 *et seq.*), as well as fraud, ultra vires, self-dealing and conversion. The complaint sought an accounting, the appointment of a receiver, liquidation of Community's assets, dissolution of the corporation, and injunctive and other relief. Pursuant to plaintiff's motion, the court entered a temporary restraining order on December 12, 1980, enjoining Chicago Title and Trust Company from distributing any of the funds held in escrow pursuant to its agreement with Community and Evanston and from paying any fee to Morgan. Morgan was given leave to intervene. On January 26, 1981, Community filed a motion to dismiss the action which was denied by the court. A hearing was held on the Attorney General's motion for a preliminary injunction order enjoining the escrowee from disbursing any funds and from paying Morgan. An order was entered which authorized the escrowee to invest the escrow funds in U.S. Treasury Bills. Community was restrained from disbursing any of its funds or assets without court order. A receiver was appointed to handle and control all the assets and liabilities of Community and directed that custody of Community's books and records be given to the receiver. On February 3, 1981, Community appealed this order. On February 11, 1981, the

court amended its preliminary injunction order to specifically provide that the $150,000 held in escrow for payment of Morgan's fee was included as an asset of Community to pass to the receiver. Morgan appealed this order.

On July 9, 1981, the receiver petitioned the court to settle Morgan's claim against Community. The petition recited that on June 16, 1981, the receiver, his attorney, plaintiff's counsel and Morgan's counsel, met in an effort to settle Morgan's claim. As a result of the conference, the parties agreed that Morgan was to be paid $100,000 in full satisfaction of its claim against Community and that Morgan would execute a release to Community. Community objected to the receiver's petition to settle Morgan's claim and also to other claims submitted by the receiver to the court. On July 13, 1981, the court entered an order authorizing the receiver to pay certain claims against Community and directed the escrowee to deliver to the receiver any of the funds or obligations of the United States it held in escrow. Community was granted an extension of time to file its amended motion to modify the preliminary injunction and the hearing on the petition to pay Morgan's claim was continued. Community appealed from the payment of the claims totaling $118,854.78 and from the modification of the injunction order. On July 23, 1981, Community filed an amended motion to modify the preliminary injunction which sought vacation of the receivership and of the appointment of the receiver's attorney; return of its books, records and documents and release of a sum of money from the escrowee for the purpose of preparing its defense. On August 12, 1981, the court denied Community's foregoing motion. Community appealed the August 12, 1981, order. After a hearing held on Morgan's claim the court entered judgment in Morgan's favor against Community for $100,000 on August 21, 1981. Both Community and Morgan appeal from the August 21, 1981, order.

OPINION

██ Community first asserts that the complaint failed to state a cause of action and hence its motion to dismiss the complaint was improperly denied. Community argues that the denial of its motion is subject to interlocutory appeal pursuant to Supreme Court Rule 307 which allows an appeal from an order granting, modifying or refusing an injunction or an order appointing or refusing to appoint a receiver. (Ill. Rev. Stat. 1979, ch. 110A, pars. 307(a)(1), 307(a)(2).) We disagree. The denial of a motion to strike or dismiss of itself is not an appealable order under Rule 307, but merely an interlocutory order which is not a final disposition of the proceedings sufficient to confer jurisdic-

tion on the appellate court. (*Cahokia Sportservice, Inc. v. Illinois Liquor Control Com.* (1975), 32 Ill. App. 3d 801, 336 N.E.2d 276.) Therefore, we decline to review the court's order denying Community's motion to dismiss.

Community next contends that the entry of the preliminary injunction was improper. The substance of Community's argument in support of this contention is that the evidence introduced at the hearing to determine if an injunction should issue was totally insufficient to support the allegations of the complaint, and that plaintiff made no showing that his remedy at law was inadequate.

■ Section 55 of the Not for Profit Corporation Act (Ill. Rev. Stat. 1979, ch. 32, par. 163a54) provides that in proceedings to liquidate the assets and affairs of a not-for-profit corporation the court shall have all ordinary powers of a court of equity to issue injunctions. To support a request for a preliminary injunction the plaintiff must establish the liklihood of success on the merits. (*Kable Printing Co. v. Mount Morris Bookbinders Union Local 65-B Graphic Arts International Union* (1976), 63 Ill. 2d 514, 349 N.E.2d 36.) In order to show likelihood of success on the merits, a party is not required to make out a case which in all events will warrant relief in the final hearing. (*Wessel Co. v. Busa* (1975), 28 Ill. App. 3d 686, 329 N.E.2d 414.) All that is necessary is that the petitioning party raise a fair question as to the existence of the right claimed, lead the court to believe that he will be entitled to the relief prayed for if the proof should sustain his allegations, and make it appear advisable that the positions of the parties should remain as they are until the court has had an opportunity to consider the case on the merits. (*Wessel.*) On appeal, the reviewing court should confine itself to a determination of whether the trial court has properly exercised its broad discretionary powers, and each substantive issue should be considered only insofar as necessary to determine whether there has been an abuse of discretion. *Booth v. Greber* (1977), 48 Ill. App. 3d 213, 363 N.E.2d 6.

The preliminary injunction entered by the court enjoined the escrowee from distributing to Community any funds held by it in connection with the sale of Community's assets or from paying Morgan a broker's commission of $150,000. The escrowee was directed to invest the funds in U.S. Treasury Bills. Community was restrained from disbursing any funds or assets it currently possessed or from disposing of or transferring any of its records or documents.

The evidence adduced at the hearing held to determine whether a preliminary injunction should issue and whether a receiver should be appointed showed that no financial data for the year 1979 was submit-

ted by Community to the Attorney General in compliance with the Charitable Solicitations Act (Ill. Rev. Stat. 1979, ch. 23, par. 5104); that Community had used an allegedly restricted gift of $500,000 to its Endowment Fund to reduce its general obligations, and that an audit conducted by the Department of Public Aid disallowed $102,000 of $800,000 in claimed expenses; that in the same audit $4,000 in credit card expenses were disallowed because Community could not substantiate those charges as made for hospital business. This evidence was sufficient to show the likelihood of plaintiff's success on the merits.

■■ ■ Community further points out that injunctive relief is prohibited if the plaintiff has an adequate remedy at law. (*La Salle National Bank v. County of Cook* (1974), .57 Ill. 2d 318, 312 N.E.2d 252.) For there to be an adequate remedy at law which will deprive equity of its power to grant injuctive relief, the remedy, " 'must be clear, complete, and as practical and efficient to the ends of justice and its prompt administration as the equitable remedy.' [Citation.]" (*Bio-Medical Laboratories, Inc. v. Trainor* (1977), 68 Ill. 2d 540, 549, 370 N.E.2d 223, 227.) The main thrust of plaintiff's suit is to dissolve and liquidate Community. Millions of dollars in assets are involved. Should plaintiff prevail, Community will be dissolved and its assets liquidated and distributed according to the procedure set forth in the Not for Profit Corporation Act. (Ill. Rev. Stat. 1979, ch. 32, par. 163a54.) That procedure would allow distribution of these assets to other corporations, societies or organizations engaged in activities substantially similar to those of Community and thus benefit the public at large. (Ill. Rev. Stat. 1979, ch. 32, par. 163a54(c).) The injunctive relief afforded here preserves the status quo. Without it Community or the escrowee could transfer these assets, thus reducing the assets ultimately available for distribution according to statute. Plaintiff's entitlement to damages or recovery of any transferred assets would be uncertain at best and would certainly not be as practical and efficient to the ends of justice as the injunctive relief granted. (See *Bio-Medical Laboratories, Inc.*) The right of the State acting through the Attorney General to interfere in the handling of a public charitable use to prevent or correct abuses cannot be denied. (*Kerner v. Thompson* (1936), 365 Ill. 149, 6 N.E.2d 131.) Consequently we find no abuse of discretion in the entry of the preliminary injunction.

■■ ■ Community further complains that the appointment of the receiver *pendente lite* was unnecessary as the injunctive relief sufficiently protected Community's assets. Section 55 of the Not for Profit Corporation Act (Ill. Rev. Stat. 1979, ch. 32, par. 163a54) also pro-

vides that in proceedings to liquidate the assets and affairs of a not-for-profit corporation the court shall have all ordinary powers of a court of equity to appoint a receiver *pendente lite* and to take such other proceedings necessary to preserve the corporate assets and carry on the affairs of the corporation until a full hearing can be had. The appointment of a receiver rests largely within the discretion of the appointing court, the object being to secure and preserve the property for the benefit of all concerned, so that it might be subjected to such order as a court might render. (*People ex rel. Scott v. Pintozzi* (1971), 50 Ill. 2d 115, 277 N.E.2d 844.) The appointment of a receiver is justified where the directors are so managing or disposing of the corporate business or assets in their own interest that such assets will probably be lost or destroyed before a judgment can be rendered or where fraud or mismanagement exists which make it impossible for the corporation to carry on its business or preserve it assets until a settlement is reached. (*Firebaugh v. McGovern* (1949), 404 Ill. 143, 88 N.E.2d 473; *Liddell v. Smith* (1963), 43 Ill. App. 2d 57, 193 N.E.2d 45.) Whether or not the appointment of a receiver is reasonable and not arbitrary, capricious and an abuse of discretion depends on the particular circumstances surrounding the case. (*Hurst v. Papierz* (1973), 16 Ill. App. 3d 574, 306 N.E.2d 532, *cert. denied* (1974), 419 U.S. 835, 42 L. Ed. 2d 62, 95 S. Ct. 62.) Considering the showing made at the hearing that corporate directors of Community had possibly engaged in waste, mismanagement and self-dealing, appointment of a receiver to manage it affairs and operations would have been appropriate had it retained its hospital facility. It is no less appropriate because Community converted its physical plant into cash subsequent to the filing of plaintiff's suit, as the sale of the physical plant did not terminate Community's corporate existence. Those monies are still subject to the debts incurred by Community and the various claims against it. A receivership is properly granted where the subject matter of the litigation is liable to be dissipated because subject to other claims. (*Hurst; Hancock v. American Bonding & Trust Co.* (1899), 86 Ill. App. 630.) The injunctive relief afforded here may have appropriately brought those monies within the control of the court, but the appointment of the receiver was reasonably necessary to carry on the affairs of the corporation until a full hearing on the merits could be held. As such, we find no abuse of discretion in the appointment of the receiver.

Community further asserts that because the bond required by statute of an applicant petitioning for a receivership was waived, the payment of the receiver's fee and fees of the receiver's attorney de-

prived it of due process of law, as it might not be able to recover its funds should it prevail. Community cites no authority in support of its contention. Section 1 of "An Act concerning the appointment and discharge of receivers" (Ill. Rev. Stat. 1979, ch. 110, par. 407) requires that before the appointment of a receiver, the party making the application give bond to the adverse party unless the bond is waived by the court for good cause shown.

 We reject Community's argument that the waiver of the bond and the payment of the receiver's fees and those of his attorney deprived it of its property without due process of law. This argument is conjectural in nature, based on Community's possible inability to recover damages in the event the receivership is vacated. Furthermore, while the bond is given as security for any damages sustained by the adverse party in the event the appointment of the receiver is revoked or set aside (*Steinwart v. Susman* (1968), 94 Ill. App. 2d 471, 238 N.E.2d 200), the waiver of the bond would not preclude Community from pursuing its legal remedies for any damages sustained should the receivership be revoked or vacated. Therefore, we find no merit to Community's claim that it has been deprived of due process of law by the waiver of the bond and the payment of these fees.

Community further argues that it was error for the trial court to deny its July 23, 1981, amended petition to vacate the receivership and to modify the preliminary injunction imposed. Community sought the return of its books and records and the release of sufficient funds to pay attorney fees and expenses. The granting, denial or modification of a preliminary injunction is addressed to the sound discretion of the trial court and absent abuse of discretion will not be disturbed by a reviewing court. *People ex rel. Scott v. Silverstein* (1981), 94 Ill. App. 3d 431, 418 N.E.2d 1087.

 Community's petition sought vacation of the receivership and return of its books and records, asserting their possession by the receiver deprived it of due process of law. A similar question was presented in *St. Louis, Cape Girardeau & Fort Smith Ry. Co. v. Missouri ex rel. Merriam* (1895), 156 U.S. 478, 39 L. Ed. 502, 15 S. Ct. 443. Defendant corporation there had contended that the transfer of properties from one receiver to another in a foreclosure suit deprived it of its property without due process of law. The court held that the proposition did not even present a Federal question, commenting that placing defendant's property in the hands of the receiver did not operate to deprive defendant of its property as title to its property continued in the defendant corporation as before. The corporation's title to its property was no more disturbed by establishing custody in one of

two contending receivers than it was by the original order appointing a receiver. (See also *Remington Paper Co. v. Watson* (1899), 173 U.S. 443, 43 L. Ed. 762, 19 S. Ct. 456.) In the instant case the record shows that the receiver, as well as the court, afforded Community access to review its corporate books and records as needed in the receiver's office, but that Community's counsel objected because he could not review the records in his own office at his own convenience. We do not think inconvenience can be equated with deprivation and, thus, find no merit in defendant's contention. See also *Hartman v. Hartman* (1971), 2 Ill. App. 3d 163, 276 N.E.2d 56.

As to the propriety of the court's denial of Community's request to release funds for the preparation of its defense, plaintiff counters that Community's counsel never filed a claim with the receiver for payment of any fees, and thus cannot be heard to complain. The filing of such a claim with the receiver would appear to have been futile, however, as the court had previously entered an order on February 17, 1981, which stated that " *** Defendant Community Hospital of Evanston's petition for fees is denied and Community shall receive no fees whatsoever either past due or future ***." The order of August 12, 1981, in denying Community's petition to modify the injunction also denied the renewed request for further funds, thereby reinforcing the February 17, 1981,prohibition of all fees.

■ We find such a blanket prohibition an abuse of discretion. If needed Community should have access to a reasonable amount of money to present a defense to its corporate existence. Community asserts it presently has no money available to it because of the injunction and receivership imposed by the court. That assertion cannot be conclusively determined on the state of the record before us. Therefore, the orders of the trial court must be modified to allow Community to petition for the award of funds for its defense herein. The need for and the amount of such allowance, if any, shall be determined upon further hearing in the trial court. Community will have to sufficiently demonstrate the need and reasonableness of its request.

Community next contends that Morgan's fee awarded by the trial court for the services Morgan rendered in conjunction with the sale of Community's assets was barred by section 7 of the Real Estate Brokers and Salesmen License Act (Ill. Rev. Stat. 1979, ch. 111, par. 5714). The trial court found that Morgan was entitled to payment for the services it rendered in finding a purchaser "for whatever it might be, but, as stated at best, the operating assets of Community Hospital of Evanston." Section 7 provides in pertinent part that a person may not recover compensation in an Illinois court for services he rendered

if "the doing or rendering of [such services] is prohibited under the provisions of [the] Act to other than registered real estate brokers or real estate salesmen *** " unless he was registered as a real estate broker or salesman.

■■■ Thus, an individual dealing in real estate transactions who is unregistered as a real estate broker or salesman and who does not qualify under the statutory classifications not pertinent here which would exempt him from the registration requirements is not entitled to compensation for his services as a matter of law. (*Central National Bank v. Alexander Marketing, Inc.* (1977), 47 Ill. App. 3d 58, 361 N.E.2d 766.) This prohibition is extended to those individuals categorizing themselves as "finders," "originators" or "introducers" who merely introduce a buyer to a seller of real estate and who do not negotiate the terms of the transaction between the parties. *Kilbane v. Collins* (1978), 56 Ill. App. 3d 707, 372 N.E.2d 415; see also *Kilbane v. Dyas* (1975), 33 Ill. App. 3d 439, 441, 337 N.E.2d 217, 219.

Community takes the position that Morgan is barred from recovering compensation for its finder activities because neither Block, its president, nor any of its employees were licensed as real estate brokers or salesmen. Although not disputing the lack of brokers or salesmen licenses by Morgan's employees, both plaintiff and Morgan contend that the court could properly award the fee because licensure was unnecessary as the transaction involved a "hospital" and only incidentally included real estate. Plaintiff and Morgan point out that other jurisdictions have held that where an individual negotiates the sale of a business which includes real estate as a part of its assets, but not its principal asset, he need not register as a real estate broker, citing cases from Arkansas (*Frier v. Terry* (1959), 230 Ark. 302, 323 S.W.2d 415), Colorado (*Cary v. Borden Co.* (1963), 153 Colo. 344, 386 P.2d 585), Florida (*Schindler v. Florida Real Estate Com.* (Fla. App. 1962), 144 So. 2d 862), New York (*Weingast v. Rialto Pastry Shop, Inc.* (1926), 243 N.Y. 113, 152 N.E. 693), North Carolina (*Schlep v. DeMaras* (D.D.C. 1976), 410 F. Supp. 1190 (applying North Carolina law)), and Wisconsin (*Dubin v. Mohr* (1945), 247 Wis. 520, 19 N.W.2d 880.)[1] A review of the cases upon which plaintiff and Morgan rely shows that they are distinguishable from the case at bar because of the nature of the property sold. *Frier* (Arkansas), *Cary* (Colorado), and *Dubin* (Wisconsin) involved an exchange of corporate stock; *Weingast* (New York) involved the sale of a restaurant as a going con-

---

[1]Contra *Payne v. Volkman* (1924), 183 Wis. 412, 198 N.W. 438; *George Nangen & Co. v. Kenosha Auto Transport Corp* (E.D. Wis. 1965), 238 F. Supp. 157, applying Wisconsin law.

cern, including the building, lease, good will and everything else associated with it. It is difficult to determine from the opinions in *Schliep* and *Schindler* specifically what was sold, but the *Schindler* court pointedly stated that the transaction related to the sale of businesses with the leases incidentally transferred in connection with the sale. Notwithstanding the *Weingast* and *Schindler* decisions, later Florida and New York cases have held that licensure is required where the dominant element involved in the transaction is real estate (*Willner v. Wilder* (Fla. App. 1973), 280 So. 2d 1; *Sorice v. DuBois* (1966), 267 N.Y.S.2d 227, 25 App. Div. 2d 521), with Florida further holding that the issue of whether a sale should be considered a sale of a business or a sale of real estate turns on the intent of the parties. *Lutsch v. Smith* (Fla. App. 1981), 397 So. 2d 337.

Further, the viewpoint taken in the cases relied on by plaintiff and Morgan is not universal. The courts of at least 11 other jurisdictions have held that a person who negotiates or consummates the sale of a business which includes real property must be licensed as a real estate broker to recover a commission on the sale. See Annot., 82 A.L.R.3d 1139 (1978), and cases collected therein.

■■■ Morgan has vigorously argued that this was not a sale of real estate because the essence of the transaction was a sale of a 54-bed hospital and in particular the sale of the license to operate that hospital. Of course, however, a license to operate a hospital is " *** issued only for the premises and persons named in the application and [is] not *** transferable or assignable." (Ill. Rev. Stat. 1979, ch. 111½, par. 147(b).) Thus, strictly speaking, Community's hospital license was not an asset available for sale. That is not to minimize the importance of Evanston's acquisition of a license to the completion of the transaction, however. The acquisition agreement did contain as a condition precedent to Evanston's fulfilling its obligation under the contract that the Illinois Department of Public Health issue Evanston a provisional license to open, conduct, operate and maintain a hospital on the real estate. Clearly the license condition was included to place Evanston in the most favorable position possible to obtain it. Indeed subsequent to the execution of this agreement Community's suspended license was revoked, apparently without objection from Community, and a license simultaneously issued to Evanston—but the inclusion of the condition did not guarantee that a license would be issued to Evanston, and could not transform this transaction into the sale of a license.

We believe that the evidence adduced at the hearing and the terms of the agreement itself demonstrate that this transaction was

not the sale of a "hospital" entity but the sale of real and personal property.

By the terms of the acquisition agreement between them, Evanston agreed to purchase Community's real estate and its leasehold interests (also interests in real estate (*8930 South Harlem, Ltd. v. Moore* (1979), 77 Ill. 2d 212, 396 N.E.2d 1)), all of its buildings, structures, improvements and fixtures located on the real and leased property, and all of Community's personal property. The agreement provided that Evanston was not acquiring Community's corporate name, goodwill, accounts receivable or other assets not specifically included in the agreement. An additional condition precedent to Evanston fulfilling its obligations under the agreement included the requirement that the Metropolitan Sanitary District of Greater Chicago consent to the assignment of its lease of real estate with Community to Evanston.

 During the hearing held to determine the propriety of Morgan's claim, Martin Drebin, the vice president of finance and treasurer of Evanston, testified that Evanston's board of directors rejected the acquisition plan initially proposed by Lee Block of Morgan on Community's behalf. That plan called for the replacement of a majority of Community's board of directors with individuals selected by Evanston, contingent upon receipt of a $2,000,000 donation by Evanston, which would bring about the reopening of the hospital and liquidation of its liabilities. The new board of directors would assume control of all of Community's property and equipment and operate Community without restriction, subject to Community's corporate charter, bylaws and land lease. Drebin testified that Evanston rejected this proposal because it did not want to acquire Community's corporate existence or its liabilities but wanted to only acquire its operating or operable hospital facilities. Evanston's board then made an alternate proposal by which Evanston would acquire all of Community's operating or operable facilities. Notwithstanding the importance of acquisition of the hospital license to Evanston, this testimony and the terms of the agreement itself demonstrate that this transaction as ultimately concluded by the parties essentially constituted a sale of real estate within the meaning of the Act. (Ill. Rev. Stat. 1979, ch. 111, par. 5705.) Thus, we agree with Community's contention that Morgan is barred from enforcing its fee in conjunction with this transaction in the courts of this State. Therefore, the order granting judgment in Morgan's favor for $100,000 must be reversed. Inasmuch as the foregoing is dispositive, it is unnecessary to address the remaining issues raised by Morgan.

For the reasons stated, the injunction orders entered are modified to allow Community to petition for the allowance of funds for its defense herein; the judgment awarded Morgan for $100,000 is reversed; and except for the foregoing, the orders appealed from are affirmed.

Order modified in part; judgment reversed; remainder affirmed.

LORENZ and WILSON, JJ., concur.