THE PEOPLE *ex rel.* NEIL F. HARTIGAN, Attorney General of Illinois, Plaintiff-Appellee, *v.* NATIONAL ANTI-DRUG COALITION *et al.*, Defendants-Appellants.

First District (5th Division)    No. 83—981

Opinion filed May 11, 1984.

Victor F. Ciardelli, Ltd., of Chicago (Patrick M. Cummings, of counsel), for appellants.

Neil F. Hartigan, Attorney General, of Springfield, *pro se* (Floyd D. Perkins and Danita Y. Harth, Assistant Attorneys General, of counsel), for appellee.

JUSTICE WILSON* delivered the opinion of the court:

This appeal arises from an action filed by the Attorney General of Illinois seeking injunctive relief and an accounting from the local chapter, Illinois Anti-Drug Coalition (IADC) and the national chapter, National Anti-Drug Coalition, Inc. (NADC), of an organization which solicited donations in Illinois but failed to register with the Attorney General as a charitable organization. Following a hearing on the Attorney General's motion for partial summary judgment, the trial court ruled that because defendants were charitable organizations pursuant to the provisions of the Charitable Trust Act (Ill. Rev. Stat. 1981, ch. 14, par. 51 et seq.) and the solicitation act (Ill. Rev. Stat. 1981, ch. 23, par. 5101 et seq.), they must comply with the registration and financial accounting provisions of those statutes.

The questions presented for review are: (1) whether the Charitable Trust Act and the solicitation act are unconstitutionally overbroad and vague; (2) whether the solicitation act violates the first amendment to the United States Constitution; and (3) whether the Charitable Trust Act and the solicitation act violate the first amendment as applied to defendants. We affirm.

On October 16, 1981, the Attorney General filed a 13-page complaint in the circuit court of Cook County alleging that defendants were charities pursuant to the Charitable Trust Act; that they solicited contributions in Illinois for charitable purposes but that they had failed to register with the Attorney General as charitable organizations and had failed to file financial accounting information as required by the Charitable Trust Act and the solicitation act.

The relief requested as to the corporate defendants was an accounting of the assets, receipts and disbursements, liquidation of the NADC and IADC and a temporary and permanent injunction enjoining those organizations from soliciting funds in Illinois. As to the individual defendants, the complaint asked that a surcharge be levied against them individually for money which had not been spent for charitable purposes.

In response, defendants answered that they were political, not charitable organizations and were not subject to the two Acts in question. Defendants alleged as affirmative defenses that the Acts amounted to a prior restraint on their protected first amendment activities and were unconstitutionally vague and overbroad. The Attorney General's motion to strike these defenses was granted.

---

*This opinion was adopted as the opinion of the court prior to the death of Mr. Justice Wilson.

Defendants then produced evidence of the political nature of their activities. Defendants Jones and Bettag stated in their depositions that the NADC and the IADC were "dedicated to the eradication of drug abuse in our society" and that to achieve this purpose defendants published *War on Drugs Magazine of the National Anti-Drug Coalition.* Defendants also solicited door-to-door, public and telephone contributions, and engaged in educational activities to alert the public as to the consequences of drug use. They also actively campaigned against public officials who favored the decriminalization of drugs. During these solicitations defendants sought subscriptions to *War on Drugs.*

The Attorney General then filed a motion for partial summary judgment and subsequently filed a motion to strike defendants' amended affirmative defenses which were similar to their original defenses. Following a hearing on the summary judgment motion, the trial court found that defendants were charitable organizations within the meaning of the Charitable Trust Act and solicitation act and entered an order which: (1) granted the Attorney General's motion for partial summary judgment; (2) required defendants to register under the Charitable Trust Act and the solicitation act, and (3) required that defendants provide the Attorney General with a full accounting of their assets and monies received during the time which they were not registered as a charitable organization in Illinois. The court also issued a preliminary injunction enjoining defendants from soliciting in Illinois "until further order of the court."

The record shows that in granting the Attorney General's motion for partial summary judgment, the trial court reasoned that defendants were not "strictly political organizations" because their stated goal was to educate the public and because the NADC had registered in New York as a charitable organization. Further, the court determined, the NADC had stated on a New York State registration certificate that its purpose was for scientific, education *and charitable* purposes.

Defendants then responded that a 1981 amendment to their original registration document had deleted "any aspect of charitable purpose from the education process." Unpersuaded by this disclosure, the court reasoned that the deletion would not change the purpose of defendants' organization in any appreciable way and that the amendment had been filed shortly after the pending matter was initiated in Illinois.

Addressing the charter filed by defendant IADC, the court pointed out that that document stated that the purpose of the IADC

was to educate "the public and elected officials on the dangers of decriminalization and the reduction of drug penalties," along with other goals. The court then focused on defendants' nonprofit character and pointed out that charitable, educational, labor *and* political groups can fall within the category of nonprofit organizations. The court concluded that summary judgment was appropriate in this case because there was no genuine issue of material fact that defendants had a political as well as an education purpose and therefore qualified as charitable organizations under the statutes in question.

The court added that its order was "an interlocutory one in the nature of an injunction so it is appealable on an interlocutory basis." This appeal followed.

OPINION

We initially note that the three issues defendants present for our consideration primarily address the alleged unconstitutionality of the Charitable Trust Act and the solicitation act. Our concern, however, is that although these issues were originally presented as affirmative defenses, they were stricken by court order, presented again in defendants' amended answers but were *not* argued before the trial court at the hearing on the Attorney General's motion for partial summary judgment, which motion was granted. Instead, the record of those proceedings reveals that the only question presented to the trial court was whether defendants were charitable organizations such to require compliance with the statutes in question. The merits of defendants' affirmative defenses were never argued or ruled upon by the trial court.[1]

It thus appears that these issues are presented for the first time on appeal. We have previously stated, however, that when an issue is not properly preserved for review at the trial level, the merits of the appellant's argument are deemed to be waived. (See *Sandburg-Schiller v. Rosello* (1983), 119 Ill. App. 3d 318, 330-31, 456 N.E.2d 192, where we determined that the defendant waived review of one of his defenses because after the trial court denied the defendant's summary judgment motion, he failed to plead or offer proof of that issue during the evidentiary trial.) This waiver rule applies with equal force to constitutional questions which, if not presented or passed upon by

---

[1]We are cognizant of the fact that defendants' notice of interlocutory appeal requested that this court declare the acts to be unconstitutional; however, for the reasons given in this opinion, such request, without more, is insufficient to preserve the constitutional issues for our review.

the trial court, are not reviewable. *Hah v. Stackler* (1978), 66 Ill. App. 3d 947, 954, 383 N.E.2d 1264; *Jarvis v. Herrin City Park District* (1972), 6 Ill. App. 3d 516, 520, 285 N.E.2d 564.

Moreover, we have previously rejected constitutional challenges to both acts in question here and are not constrained to do otherwise at this time. See *People ex rel. Scott v. George F. Harding Museum* (1978), 58 Ill. App. 3d 408, 418, 374 N.E.2d 756, where we rejected the defendants' contention that the Charitable Trust Act was unconstitutional because it accorded different treatment to charitable trusts which operate schools and those which do not. Also see *People ex rel. Scott v. Police Hall of Fame, Inc.* (1978), 60 Ill. App. 3d 331, 340, 376 N.E.2d 665, where we rejected a constitutional challenge to the phrase "legitimate and reasonable expenses" in the solicitation act and ruled that those words "clearly alert all who are covered by the Act that the only fund-raising expenses which may be deducted from total contributions when tabulating gross receipts are those which are shown to have been justly incurred and related to furthering the solicitation efforts of the charitable organizations."

For these reasons, we conclude that defendants have waived review of the constitutional challenges to the Charitable Trust Act and the solicitation act.

■ Turning now to the merits of the trial court's preliminary injunction, we initially note that a preliminary injunction is an extraordinary remedy which is granted in order to preserve the status quo. (21A Ill. L. & Prac. *Injunctions* sec. 4 (1977).) Such an injunction does not decide controverted facts or the merits of the cause; rather it only shows that sufficient cause has been made to authorize or require the court to preserve the rights in issue until a final hearing on the merits. (*People ex rel. Fahner v. Community Hospital* (1982), 108 Ill. App. 3d 1051, 1057, 440 N.E.2d 200.) In order to show likelihood of success on the merits, a party is not required to make out a case which in all events will warrant relief in the final hearing. All that is necessary is that the petitioning party raise a fair question as to the existence of the right claimed, lead the court to believe that he will be entitled to the relief prayed for if the proof should sustain his allegations, and make it appear advisable that the positions of the parties should remain as they are until the court has had an opportunity to consider the case on the merits. 108 Ill. App. 3d 1051, 1057.

In the pending case, the evidence adduced at the hearing on the Attorney General's motion for partial summary judgment included defendants' registration statement which had been filed with the State of New York and which stated that defendant NADC had a

"charitable purpose," pamphlets, and other printed literature which showed that defendants conducted seminars to educate the public on the dangers of drug abuse and defendants' magazine, *War on Drugs*, which espoused defendants' position on drug legislation and other political issues pertinent thereto. Following arguments by both sides, however, the trial court ruled that it was unconvinced that defendants' primary purpose was political and further ruled that there was no genuine issue of any material fact which "if [it] heard or if [it] allowed an evidentiary platform for, would change [its] opinion." The court added that it did not know "what is behind [defendants'] reluctance to register," but would nonetheless order registration and an accounting for the period of time in the State of Illinois that defendants had not been registered.[2]

Our review of these proceedings, along with the entire record on appeal, convinces us that the trial court's decision to preserve the status quo and to require defendants to register as charitable organizations was not an abuse of discretion. The courts in this State are in accord in applying a broad legal definition of "charity" to include almost anything that tends to promote the improvement, well doing and well being of social man. (*People ex rel. Scott v. George F. Harding Museum* (1978), 58 Ill. App. 3d 408, 415, 374 N.E.2d 756.) Moreover, charitable organizations may include organizations whose primary purpose is *not* to provide money or services for the poor, the needy or other worthy objects of charity, but *to gather and disseminate information about and to advocate positions on matters of public concern.* These organizations characteristically use paid solicitors who "necessarily combine" the solicitation of financial support with the functions of information dissemination, discussion and advocacy of public issues. They may also pay other employees to obtain and process the necessary information and to announce in suitable form the organization's preferred positions on the issues of interest to them. *Citizens for a Better Environment v. Village of Schaumburg* (7th Cir. 1978), 590 F.2d 220, 225, *aff'd* (1980), 444 U.S. 620, 635, 63 L. Ed. 2d 73, 86, 100 S. Ct. 826, 835.

Thus, based on the evidence presented to the trial court and the authority set forth above, we find that the trial court properly entered a preliminary injunction and that it correctly ruled that defend-

---

[2]The court further stated that its order was interlocutory "*** so it is appealable on an interlocutory basis if that becomes one's intention. If not, I think it would move after the period of accounting to a final order and you can reserve your right to appeal until such time as the full order becomes final." Defendants filed a timely appeal; however, the record is devoid of the entry of a final order on this issue.

ants had a charitable purpose.

■ Having determined that defendants' constitutional issues were not preserved for our review and that the trial court's entry of a preliminary injunction was proper, we now address the question of the Attorney General's common law authority to enforce charitable trusts, which authority we note was specifically recognized by this court in *People ex rel. Scott v. George F. Harding Museum* (1978), 58 Ill. App. 3d 408, 413, 374 N.E.2d 756. In that case, we clearly stated that:

> "The purpose of the Charitable Trust Act is to assist the Attorney General *in carrying out his common law powers and duties* to enforce charitable trusts and to see to the application of their funds to their intended charitable uses. [Citation.] Prior to enactment of the Charitable Trust Act, trustees of charitable trusts had no duty to make the Attorney General aware of the existence of charitable trusts or of the manner of their operation. The Act is intended to give the Attorney General the tools with which to discharge his responsibilities. The 1963 amendments to section 3 of the Act, which redefined 'trustee,' were intended to bring all foundations and not-for-profit corporations 'holding property for any charitable purpose' within the scope of the Act." (Emphasis added.)

We further note that our supreme court has determined that pursuant to article V, section 15 of the Illinois Constitution, the Attorney General is the sole officer who is authorized to represent the people of the State of Illinois in *any* litigation in which the people are the real party in interest, absent a contrary constitutional directive. (*People ex rel. Scott v. Briceland* (1976), 65 Ill. 2d 485, 359 N.E.2d 149.)[3] In the *Briceland* decision, the court explained that section 15 added to the language of the prior (1870) constitutional provision which had created the office of Attorney General and had provided only that he "shall perform such duties as may be prescribed by law." (Ill. Const.

---

[3]Article V, section 15 of the Illinois Constitution of 1970 provides that "The Attorney General shall be the legal officer of the State, and shall have the duties and powers that may be prescribed by law." Indeed, the right of the State acting through the Attorney General to interfere in the handling of a public charity to prevent or correct abuses cannot be denied. Regarding the Attorney General's authority under the Charitable Trust Act, see *Metropolitan Sanitary District ex rel. O'Keeffe v. Ingram Corp.* (1981), 85 Ill. 2d 458, 478-79, 426 N.E.2d 860; *In re Estate of Tomlinson* (1976), 65 Ill. 2d 382, 388, 359 N.E.2d 109; and *People ex rel. Scott v. Silverstein* (1980), 86 Ill. App. 3d 605, 609, 408 N.E.2d 243. Regarding the Attorney General's authority under the solicitation act, see *People ex rel. Brown v. Illinois State Troopers Lodge No. 41* (1972), 7 Ill. App. 3d 98, 105, 286 N.E.2d 524.

1870, art. V, sec. 1.) The court further noted that in *Fergus v. Russel* (1915), 270 Ill. 304, 110 N.E. 130, the court held that the 1870 constitution granted the Attorney General *all the powers associated with that office at common law* and that while the legislature could add to these powers, it could not reduce the Attorney General's common law authority. *People ex rel. Scott v. Briceland* (1976), 65 Ill. 2d 485, 492-93.

In our opinion, therefore, it is evident that both the Illinois Constitution and the supreme court have recognized the common law authority of the Attorney General to protect the rights of the people of Illinois. This responsibility includes the duty to protect, supervise and enforce charitable trusts. (See G. Bogert, Trusts & Trustees sec. 411 (2d ed. 1977).) We thus conclude that because the Attorney General properly initiated this action pursuant to its statutory as well as its constitutionally prescribed authority, the trial court's decision in this matter will be upheld.

Affirmed.

MEJDA, P.J., and LORENZ, J., concur.