AL TIERNEY *et al.*, Plaintiffs-Appellants, v. THE VILLAGE OF SCHAUMBURG, Defendant-Appellee.

First District (3rd Division)   No. 1—88—1524

Opinion filed May 10, 1989.

Bernard J. Sarley, of Elk Grove Village, for appellants.

Jack M. Siegel, of Chicago, for appellee.

JUSTICE RIZZI delivered the opinion of the court:

Plaintiffs, Al Tierney, Cathy Tierney, Bernard J. Sarley, Jan Sarley and Carrol E. Siebold, brought this action for injunctive and declaratory relief to prevent the defendant, Village of Schaumburg (the Village), from constructing a 50-foot-wide collector or secondary street, without sidewalks on either side, adjacent to their homes.

Plaintiffs alleged that the construction of the collector or secondary street would violate the Village's own ordinance. The trial court denied plaintiffs' request for a temporary restraining order to preserve the status quo. Plaintiffs appeal. We reverse and remand with directions.

On April 18, 1988, plaintiffs filed a verified complaint, seeking a temporary, preliminary and permanent injunction, as well as declaratory relief. The next day, plaintiffs filed a petition for a temporary restraining order and a preliminary injunction to maintain the status quo with regard to the construction of the 50-foot-wide collector or secondary street. The petition reincorporated and realleged the facts contained in the verified complaint which was attached to the petition. The Village filed an answer to the petition, but it did not file an answer to the verified complaint. The trial court, and the parties, treated the petition solely as a motion for a temporary restraining order.

Although there was a hearing on the petition, no evidence was presented. The trial court heard only the arguments of respective counsel. Since there was no evidentiary hearing, and the Village did not file an answer denying the allegations in the verified complaint, we consider as true all well-pled facts alleged in the complaint. (*Opportunity Center of Southeastern Illinois, Inc. v. Bernardi* (1986), 145 Ill. App. 3d 899, 905, 496 N.E.2d 340, 344; *Stasica v. Hannon* (1979), 70 Ill. App. 3d 785, 788, 388 N.E.2d 1110, 1111-12.) Also, we note that the Village's answer to the petition does not deny significant facts that are alleged in the verified complaint. These facts are as follows: (1) the roadway that the Village intends to construct is classified as a collector or secondary street as stated in the Village's own ordinance; (2) the roadway is to be 50 feet wide rather than the 80-foot width that is required by the Village's existing ordinance for collector or secondary streets; (3) the roadway will not have sidewalks on either side although the Village's existing ordinance requires that all streets have sidewalks on both sides; (4) the 50-foot-wide collector or secondary street would be "extremely dangerous" because it "would *** [subject] the plaintiffs, on a daily basis *** to the hazards of an errant automobile"; and (5) the "plaintiffs will *** [have] an unsafe road abut their backyards." We believe that for purposes of pleading, these facts are ultimate facts and not mere conclusional facts because the basic facts warranting the statements are sufficiently set forth within the context of the statements. Thus, the facts which we have stated are well-pled facts which we consider true. The significance of these facts will become evident as the other facts are related.

On July 26, 1977, the Village passed ordinance No. 1435 (0-1435). Ordinance 1435 approved a planned unit development known as Kingsport Village East. Ordinance 1435 provides that the "developer will dedicate a 50-foot wide easement on the north property line for future roadway extension." Ordinance 1435 does not provide for the inclusion of sidewalks on either side of the future roadway extension.

On October 24, 1978, the Village passed ordinance No. 1639 (0-1639), entitled "Subdivision Control Regulations of the Village of Schaumburg." Ordinance 1639 provides for minimum right-of-way widths and the minimum design standards for particular street classifications. Ordinance 1639 states that streets classified as collector or secondary streets shall have a minimum right-of-way width of 80 feet. Ordinance 1639 also states, "Sidewalks are required along both sides of all streets."

On April 12, 1988, the Village began construction of the Biesterfield Road Extension Project (Project). The purpose of the Project is to build a collector or secondary street as a roadway extension on the 50-foot-wide easement on the north property line that is referred to in 0-1435. Under the Project, there will not be a sidewalk on either side of the collector or secondary street.

■ On appeal, plaintiffs argue that construction of the Project would be dangerous and unsafe to their families because the Project provides for the construction of a collector or secondary street with a 50-foot right-of-way width, rather than the minimum 80-foot right-of-way width that is required by 0-1639, and because the Project does not provide or leave room for sidewalks on both sides of the street as required by 0-1639. The Village contends that the 50-foot-wide street does not violate the provision in 0-1639, which requires that the minimum width for collector or secondary streets be 80 feet. The Village relies upon the following provision in 0-1639: "The subdivision control regulations are applicable to planned unit developments as authorized in the zoning regulations of the Village of Schaumburg, except as specifically varied in the individual P.U.D. implementing ordinance." The Village argues that since 0-1435 states that the "developer will dedicate a 50-foot wide easement on the north property line for future roadway extension," 0-1435 has specifically varied the 80-foot width requirement for collector or secondary streets in 0-1435.

We disagree with the Village's argument. Plainly, the language in 0-1435 does not provide for the construction of a collector or secondary street within the 50-foot-wide easement for future roadway extension. Thus, we believe that the language in 0-1435 does not purport to abolish or reduce the 0-1639 minimum width requirement for collector

or secondary streets. We therefore conclude that the minimum 80-foot requirement for collector or secondary streets in 0-1639 is not "specifically varied" by 0-1435.

■ The Village also contends that because 0-1435 does not provide for sidewalks in that part of the ordinance which states that the "developer will dedicate a 50-foot wide easement on the north property line for future roadway extension," 0-1435 has specifically varied the requirement in 0-1639 that sidewalks are required along both sides of all streets. We disagree. Merely because sidewalks are not mentioned in the pertinent provision in 0-1435 does not mean that 0-1435 has specifically varied the requirement in 0-1639 that all streets have sidewalks on both sides. Actually, the opposite conclusion is true. Thus, we believe it is clear that 0-1435, which was adopted before 0-1639 was adopted, does not specifically vary the requirement in 0-1639 that sidewalks be constructed along both sides of all streets.

■ Since construction of the Project violates 0-1639, the Village is violating its own ordinance by going ahead with the Project. However, a municipality must follow its own ordinances. (*People ex rel. J.C. Penney Properties, Inc. v. Village of Oak Lawn* (1976), 38 Ill. App. 3d 1016, 1019, 349 N.E.2d 637, 640.) If a municipality violates its own valid ordinance, the municipality's action is illegal and courts have jurisdiction to enjoin the illegal action. *Ralston Purina Co. v. Village of Wood Dale* (1971), 132 Ill. App. 2d 262, 265, 267 N.E.2d 678, 680.

■ Here, if the Village had wished to change 0-1639, which establishes that a collector or secondary street must have a minimum right-of-way width of 80 feet and that all streets must have sidewalks on both sides, the Village should have strictly complied with the legal requirements for amending or repealing the ordinance, including notice and hearing. Since the Village did not legally amend or repeal 0-1639, the Village's action in constructing the Project is illegal, and the courts have jurisdiction to enjoin the Village's illegal action.

■ Having concluded that the courts have jurisdiction to enjoin the Village's illegal action, we next address whether the trial court abused its discretion in denying the request for a temporary restraining order. (See *McRand v. Van Beelen* (1985), 138 Ill. App. 3d 1045, 486 N.E.2d 1306; *Blue Cross Association v. 666 North Lake Shore Drive Associates* (1981), 100 Ill. App. 3d 647, 427 N.E.2d 270.) In order for a temporary restraining order to issue, the facts must demonstrate that (1) the party seeking relief has a protectable right; (2) he will suffer irreparable injury if injunctive relief is not granted; (3) his remedy at law is inadequate; and (4) there is a likelihood that he will

succeed on the merits. *Houseknecht v. Zagel* (1983), 112 Ill. App. 3d 284, 291, 445 N.E.2d 402, 407.

■ Here, the salient facts are that the Village's illegal action will substantially interfere with plaintiffs' right to the peaceful enjoyment of their homes because the violation will result in the creation of a hazardous and unsafe street abutting their property. We believe that these facts clearly demonstrate that plaintiffs have a protectable right in this matter.

Moreover, the transgression that is involved in this case is of a continuing nature. Where the transgression is of a continuing nature, irreparable injury is presumed to follow if the protectable right is not safeguarded. (See *McRand v. Van Beelen*, 138 Ill. App. 3d 1045, 1054, 486 N.E.2d 1306, 1313; *Witter v. Buchanan* (1985), 132 Ill. App. 3d 273, 292, 476 N.E.2d 1123, 1127.) In addition, we believe that in the present case the presumed irreparable injury to plaintiffs if they are denied a temporary restraining order is much greater than the harm to the Village if the equitable relief is granted. In this regard, the following observation in plaintiff's brief is worthy: "Parenthetically, it is important to state at this point that, if construction of the road is enjoined, the defendant is not left with no alternative other than to abort its construction. If the Village feels strongly enough that construction of the Biesterfield Road Extension is necessary, they have the lawful authority to institute condemnation proceedings against the plaintiffs. By doing so, they can acquire the necessary land to meet the right-of-way requirements for this road. In that case, the road would meet Village ordinance requirements and would be safe." Under the circumstances, we conclude that the operative facts in this case establish a presumption that the plaintiffs will suffer irreparable injury if the Village's illegal action is not halted.

■ We next examine whether plaintiffs have an adequate remedy at law to protect their right to the peaceful enjoyment of their real property. In order to have an adequate remedy at law which will preclude injunctive relief, the remedy must be clear, complete and as practical and efficient to the ends of justice and its prompt administration as the equitable remedy. (*Bio-Medical Laboratories, Inc. v. Trainor* (1977), 68 Ill. 2d 540, 549, 370 N.E.2d 223, 227; *People ex rel. Fahner v. Community Hospital* (1982), 108 Ill. App. 3d 1051, 1058, 440 N.E.2d 200, 206.) In the present case, although plaintiffs' remedy at law in the form of monetary damages might be clear, such a remedy would not be complete or as practical and efficient to the ends of justice and its prompt administration as the equitable relief that is sought. Moreover, monetary damages alone do not prevent the

harm created when the harm involves the construction of a hazardous and unsafe road abutting one's property. If plaintiffs are awarded solely monetary damages, while the 50-foot-wide collector or secondary street remains, the street will still be in violation of the Village's own minimum safety requirements and as hazardous and unsafe as it would be notwithstanding the remedy at law. As a result, plaintiffs do not have an adequate remedy at law.

■ We shall next consider whether plaintiffs have established that they are likely to be successful on the merits. In this regard, a party is not required to make out a case which in all events will warrant relief on the merits. Rather, the moving party need only raise a fair question as to the existence of the right claimed and that he will be entitled to the relief prayed for if the proof should sustain his allegations. (See *People ex rel. Hartigan v. National Anti-Drug Coalition* (1984), 124 Ill. App. 3d 269, 273, 464 N.E.2d 690, 694; *People ex rel. Fahner v. Community Hospital*, 108 Ill. App. 3d 1051, 1057, 440 N.E.2d 200, 205.) Under the circumstances, which we have already discussed, we believe it is patent that plaintiffs have sufficiently established that they are likely to succeed on the merits.

In reviewing this case, we appreciate that the decision to grant or deny injunctive relief is within the discretion of the trial court. However, if it appears upon review that the trial court abused its discretion in denying injunctive relief, a reviewing court will reverse the trial court. Here, for the reasons which we have stated, we conclude that the trial court abused its discretion in denying plaintiffs' request for a temporary restraining order.

The trial court's denial of plaintiffs' request for a temporary restraining order is, therefore, reversed and the case is remanded with directions to conduct further proceedings for the determination of what, if any, equitable relief plaintiffs are entitled under the circumstances that exist after remandment, consistent with what is stated in this opinion. In addition, the trial court shall permit the pleadings to be amended to take into account the circumstances that exist after remandment, and the trial court shall grant the relief in equity or at law to which plaintiffs are entitled on the amended pleadings or upon the evidence. See generally Ill. Rev. Stat. 1987, ch. 110, pars. 2—617, 11—107.

Reversed and remanded with directions.

FREEMAN, P.J., and WHITE, J., concur.