WENCORDIC ENTERPRISES, INC., Plaintiff-Appellee and Cross-Appellant, v. IRVING M. BERENSON, Defendant-Appellant and Cross-Appellee.

Second District   No. 2—86—1016

Opinion filed July 29, 1987.

Ray & Glick, Ltd., of Libertyville (Kenneth J. Glick, of counsel), for appellant.

Hall, Holmberg, Roach, Johnston, Fisher & Lessman, of Waukegan (Robert E. Lessman, of counsel), for appellee.

JUSTICE WOODWARD delivered the opinion of the court:

The defendant, Irving M. Berenson (Berenson), appeals from the judgment of the circuit court which ordered him to return 40 shares of Wencordic Enterprises, Inc., and $27,200 in dividend payments to plaintiff. Plaintiff, Wencordic Enterprises, Inc. (Wencordic), cross-appeals the circuit court's decision denying its requested relief for a constructive trust to be imposed on the $5,000 Federal Housing Administration (FHA) refund received by defendant, $12,507.50 in cash legal fees, and stock distribution made prior to August 6, 1984, in the amount of $24,700 and denying it leave to amend its pleadings to conform to the proof insofar as the plaintiff's alleged unauthorized practice of law. Further plaintiff requests judgment in its favor against Berenson for the return of his limited partnership share and all distributions related thereto plus the post-trial payment not covered by the court's order.

Late in 1968, Irving Berenson and Wendell Studebaker met concerning the development of a nursing home in Zion, Illinois, upon property owned by the Studebaker family. Berenson, an attorney licensed to practice in Wisconsin, had served for a number of years as counsel to Sheridan Nursing Home in Kenosha, Wisconsin. Defendant agreed to do certain legal work for one share of the entity to be formed. The extent of the legal work to be performed for that one

share was never clarified. Defendant testified at trial that he understood that he would receive one share of the enterprise for his work in obtaining financing from the Federal Housing Authority. Wendell Studebaker testified that his understanding was that the legal work for the one share encompassed everything necessary to get the nursing home "up and around."

In 1968, defendant set up a limited partnership, known as Park Manor Limited Partnership, for the ownership of the nursing home, and, in 1969, he incorporated the plaintiff, Wencordic, an Illinois corporation, as the general partner of said partnership. The corporation elected to be taxed as a subchapter S corporation under the Internal Revenue Code, upon defendant's advice. Park Manor had a total capitalization of $200,000. Plaintiff corporation had a 30% interest in Park Manor, while the limited partners possessed the remaining 70%. There were 14 limited partners, each holding a 5% interest in Park Manor. Wencordic's contribution was the Zion, Illinois, real estate which was owned by the Studebaker family.

Defendant, who was plaintiff's attorney and also secretary/treasurer of the corporation, was directly involved in the activities essential to the creation of the nursing home. He found investors and set up the limited partnership. Defendant successfully negotiated with the FHA to finance construction of the nursing home. He obtained a variation from the Environmental Protection Agency (EPA) to permit building of the structure. The work involved in getting the nursing home on track far exceeded the personal estimate of the time and effort to be expended by the defendant, as determined by the defendant. From 1969 to 1973, defendant complained on a regular basis to various members of the Studebaker family about the amount of work that he was doing and that it was beyond what he had originally calculated as necessary to get the nursing home up and running. For his legal work defendant received one share of the limited partnership, which was valued at $10,000.

Defendant claims that in June 1973 he submitted to the Wencordic board a bill for legal fees incurred from 1969 to 1973. Apparently, these fees were for legal work which was in excess of what defendant had initially agreed to do for his one share of the limited partnership. There is no indication of plaintiff's seriously contesting these fees until the commencement of this lawsuit. Plaintiff contends that it never received a bill for legal services until 1977.

The nursing home opened in April 1973. On May 2, 1973, the Wencordic board of directors authorized 240 shares of stock to be issued. Two hundred shares went to five members of the Studebaker

family. Forty shares went to defendant, who asserts that these shares were a gift from plaintiff. Defendant was issued a stock certificate signed by Wendell Studebaker, the president of Wencordic. With his 5% share of the limited partnership and 40 shares of stock (which equalled 5% of the enterprise), defendant possessed 10% of Park Ma-. nor.

No corporate resolution explained the distribution of the stock to the defendant. The corporate documents are silent as to the purpose of extending the 40 shares to the defendant.

After the opening of the nursing home in 1973, defendant continued to serve as plaintiff's attorney and remained a director and officer of the corporation.

In 1978, plaintiff began paying defendant the unpaid legal fees, which totalled approximately $13,000, and completed the payment of fees in August 1981. After the legal bill was paid, Wendell Studebaker asked defendant to return the 40 shares of stock issued to the latter in 1973. Defendant refused to do so. In August 1984, plaintiff's board of directors voted to formally request the return of the 40 shares of stock. Prior to this lawsuit, defendant had received approximately $27,000 in dividends on the 40 shares of stock. This cause of action commenced in December 1984.

On appeal, defendant asserts that (1) the trial court erred in placing the burden of proof on defendant to prove that the stock issued to him was a gift; (2) the trial court's finding that the stock was issued as security for unpaid legal fees was against the manifest weight of the evidence; and (3) the trial court erred in failing to find that the plaintiff's action was barred by the statute of limitations or by laches.

■■ ■ We first address the burden of proof issue raised by defendant. An attorney for a corporation client has a fiduciary relationship to that client. (Karris v. Water Tower Trust & Savings Bank (1979), 72 Ill. App. 3d 339.) Also, a director of a corporation has a fiduciary relationship to that corporation and its stockholders. (Winger v. Chicago City Bank & Trust Co. (1946), 394 Ill. 94.) These relationships generally require the fiduciary to establish the fairness of any business transaction between the parties. (Schlensky v. South Parkway Building Corp. (1960), 19 Ill. 2d 268.) As a result of defendant's positions both as attorney for and director of Wencordic Enterprises, the trial court found defendant to be a fiduciary and, therefore, placed the burden of proof on him to show that the disputed shares of stock were a gift.

■ Defendant argues that the burden of proof should not have been placed on him because the trial court failed to consider the fact

that plaintiff is a majority stockholder and, as such, owed a fiduciary duty to defendant as minority stockholder. Defendant asserts that this duty placed a burden on plaintiff to prove the validity of the transaction it alleges occurred, *i.e.*, the transfer of stock to defendant was security for legal bills rather than a gift. In the instant case, plaintiff is not a majority stockholder, but the corporation itself is. Corporate entities do not owe fiduciary duties to minority stockholders; therefore, this argument is not applicable to this cause of action.

It is clear that as attorney to and director of plaintiff, defendant owed a fiduciary duty to plaintiff. Consequently, the trial court was correct in finding that the burden of proof was upon defendant to demonstrate the Wencordic stock was issued to him as a gift.

■ We next address defendant's assertion that the trial court's finding that the stock issued to him as a gift is against the manifest weight of the evidence.

It is particularly within the province of the trial court, not the court of review, to ascertain the credibility of the witnesses, the weight to be accorded their testimony, and the inferences to be deduced from the evidence. (*People v. Houston* (1986), 146 Ill. App. 3d 982, 985-86.) We will reverse the judgment of the trial court only when its decision is contrary to the manifest weight of the evidence (*People v. Butler* (1985), 137 Ill. App. 3d 704, 711), not when the evidence is merely conflicting (*People v. Crowell* (1973), 53 Ill. 2d 447, 451).

Regarding the ownership of the 40 disputed shares of Wencordic stock, we have carefully reviewed the evidence adduced at trial. Defendant contended that the shares of stock constituted a gift from plaintiff. Yet there is no evidence in the minutes of the corporation board of director's meeting to substantiate his claim. In the corporate board minutes dated April 10, 1973, the following language is found: "Sec. Berenson's pay should be an expense, *i.e.*, a stock agreement to be arranged at future meeting. Possibly stock could be set aside in Trust Account." From the corporate board minutes of April 19, 1973, we quote the following passage found under Old Business: "STOCK DISTRIBUTION—Richard Studebaker motioned that Sec. Berenson receive share of stock equal to each owner's share of 1/6 interest in Wencordic. Sec. Berenson advised that we can keep unused stock if Wencordic wishes to include more stockholders at later date. We need expertise of lawyer within. Legal angle was discussed: Do we need other legal talent besides Sec. Berenson? Question raised regarding conflict of interest due to Sec. Berenson's dealing with Wencordic and Park Manor Ltd. Legally and corporately our organizing is done."

The motion that defendant receive a one-sixth interest in Wencordic was apparently neither seconded nor passed. Plaintiff's witnesses, John Studebaker, the former president of Wencordic, testified that at no time did he ever state to defendant that he (Studebaker) was going to give him an interest in Wencordic. Mr. Studebaker further testified that he never told defendant that he (Studebaker) wanted him to have an additional share in the business. Wendell Studebaker, former president of Wencordic, testified that the shares were issued to defendant as collateral for legal fees owed to the latter. In the corporate minutes of May 2, 1972, the following language is found. "UNFINISHED BUSINESS—STOCK DISTRIBUTION Stock was distributed, 40 shares to each holder No Par value 260 in reserve." At this time, 40 shares of stock were issued to defendant. Wendell Studebaker, then the president of Wencordic, signed the stock certificate. The minutes were silent as to the purpose for the issuance of stock to defendant.

Plaintiff stipulated that in all the required audit reports and reports to State and Federal health agencies from 1973 on, defendant was listed as having a share of the limited partnership and a one-sixth interest in Wencordic Enterprises. Further, defendant was issued regularly distributed dividends on the stock. Defendant asserts dividends would only be issued to him if he owned the 40 shares rather than held a security interest in them.

Conversely, plaintiff contends that the stock was issued as collateral for fees owed to defendant for work performed from 1969 to 1973. Wendell Studebaker testified that at the time the stock was issued to defendant, he told the latter that the stock "was like collateral. If he never got paid and this thing went down, he would at least have something to write off from." He further testified that he assumed that if the nursing home did not succeed, defendant would be able to make a deduction from his income tax. On cross-examination, Mr. Studebaker did admit that there existed no document which limited defendant's right of ownership in and to the Wencordic shares.

■■ ■ Elements of a valid gift are donative intent, donor's parting with exclusive dominion and control over the subject of the gift, and delivery thereof to the donee. (*Frey v. Wubbena* (1962), 26 Ill. 2d 62.) The evidence demonstrates no donative intent on the part of the plaintiff to give the stock to defendant as a gift. Neither the corporate minutes nor the testimony of the other board members demonstrate any donative intent regarding issuance of the stock.

Conversely, the evidence supporting plaintiff's contention that the stock was issued as a security interest for defendant's legal fees is not overly compelling. No document limits defendant's right of owner-

ship in and to the 40 shares of stock. If the stock is a security interest, then there is no reason to issue dividends on the stock to the creditor/defendant.

There is no question that the evidence regarding the disputed stock is conflicting. Where the evidence is merely conflicting, we will not reverse the finding of the trial court. (*People v. Crowell* (1973), 53 Ill. 2d 447.) Consequently, we do not find that the trial court's decision is against the manifest weight of the evidence.

■ Defendant's final contention is that the trial court erred in failing to find that plaintiff's action was barred by the statute of limitations. Defendant argues that plaintiff bases the return of the Wencordic stock on a theory of constructive trust, and, therefore, a five-year limitations period applies to this case. (*Chicago Park District v. Kenroy, Inc.* (1980), 78 Ill. 2d 555.) We are persuaded by the reasoning of the trial court which considered the stock issued as security for defendant's unpaid legal bills. The court found that, since the legal bills were not fully paid until 1981, plaintiff had no right to the return of the stock until that time. Plaintiff's action would not have accrued until 1981. Since the suit was filed in 1984, the five-year limitations period would not bar this cause of action. We find that court's reasoning dispositive of this issue. Clearly, the period of the statute of limitation period did not begin to run until 1981. Filed in 1984, this action comes squarely within the appropriate time period.

■ Finally, plaintiff argues that defendant's claim is barred by the doctrine of *laches*. It is not necessary to list the four elements of *laches* as defined in *In re Marriage of Cuberly* (1985), 135 Ill. App. 3d 55. Defendant was on notice of plaintiff's intention to recover the 40 shares of stock as early as 1981. He cannot now claim lack of knowledge or notice that plaintiff would assert the right on which this suit is based. Plaintiff's claim is not barred by the doctrine of *laches*.

■ Plaintiff's cross-appeal, which alleges defendant's unauthorized practice of law in Illinois, is an issue raised for the first time on appeal. As such, this court will not consider whether it has merit. (*In re Marriage of Garrison* (1981), 99 Ill. App. 3d 717.) Matters not decided by the trial court are not properly before the reviewing court. (*In re Marriage of Weiss* (1980), 87 Ill. App. 3d 643.) Further, we affirm the trial court's denial of plaintiff's motion to amend its pleadings to conform to the proof insofar as plaintiff's unauthorized practice of law is concerned.

■ Finally, we deny plaintiff's request that a constructive trust be imposed on the $5,000 refund defendant received from the FHA, together with $12,507.50 in legal fees, and stock distributions of

$24,700 made prior to August 6, 1984. The fees were legally earned by defendant. As the trial court stated, it would be inequitable to order the return of the stock distributions issued prior to the filing of the suit.

For the reasons stated above, we affirm the decision of the trial court in its entirety.

Affirmed.

REINHARD and UNVERZAGT, JJ., concur.