GEORGE J. MURGES *et al.*, Plaintiffs-Appellees, v. JOHN T. BOWMAN *et al.*, Defendants-Appellants.

First District (2nd Division)   No. 1—92—2881

Opinion filed October 12, 1993.

David A. Novoselsky & Associates, of Chicago (David A. Novoselsky, Linda A. Bryceland, and Kevin S. Besetzny, of counsel), for appellants.

Johnson & Bell, Ltd., of Chicago (Michael P. Siavelis, Marilyn M. Reidy, and Karyn L. Ordower, of counsel), for appellees.

PRESIDING JUSTICE McCORMICK delivered the opinion of the court:

Defendants took files and employees with them when they resigned from plaintiff's law firm. The trial court imposed a temporary

restraining order (TRO) requiring defendants to account for funds earned on the files they took. At the conclusion of the hearing on the motion for preliminary injunction, the trial court issued an opinion in which it appointed a receiver and modified the TRO to deny defendants any access to fees earned on contested files pending issuance of the preliminary injunction, which the trial court said it would issue within two weeks. Defendants bring an interlocutory appeal from the opinion.

We find that we have jurisdiction to review only the narrow issue of whether the trial court abused its discretion by appointing a receiver *pendente lite*, by modifying the TRO or by denying defendants' motion to dissolve the TRO. Defendants argue primarily that the trial court erred by imposing a preliminary injunction, but the record does not include the preliminary injunction promised in the order appealed from. Since defendants do not show that the trial court abused its discretion, we affirm.

From 1984 until 1992, George Murges, John Bowman and Lane Corday worked together as the law firm of Murges, Bowman and Corday, Ltd. (MBC). In June 1989, Bowman and Corday asked Murges to restructure their compensation so that each would receive one-third of the profits and a salary equal to Murges'. Murges agreed. Thereafter, Murges did not personally handle any MBC cases, and he represented a client at a hearing only once after 1988.

On August 20, 1991, Bowman and Corday told Murges that they wanted to buy MBC from him. Corday suggested paying Murges "a year or two years' worth of compensation." Murges said he did not want to discuss the sale of MBC at that time. They next discussed the proposal in September or October 1991. Murges said that the price should be in seven figures. Corday told him that was ridiculous, and he did not make a counteroffer.

On December 30, 1991, Bowman and Corday decided to leave MBC. They did not mention this decision to Murges before he left for vacation in Florida on January 3, 1992. During January, Bowman and Corday made arrangements to set up a new firm, and they prepared a form letter to send to clients of MBC informing the clients of the dissolution of the firm. Bowman and Corday hired all employees of MBC to work at their new firm.

On January 18, 1992, Bowman called Murges in Florida and said that Bowman and Corday resigned as officers, directors and employees of MBC. They left letters of resignation on Murges' desk. Bowman and Corday took the files for all 660 clients of MBC to the offices of the new firm, Bowman and Corday. The new firm sent letters

to all of MBC's clients informing them of the dissolution and requesting a designation of attorney. More than 400 clients signed the enclosed form to designate Bowman and Corday as their attorneys.

On January 23, 1992, Murges and MBC filed a complaint for an injunction directing Bowman and Corday to return the files and precluding defendants from soliciting MBC's clients. Murges and MBC also sought recovery of legal fees earned for work on the files and tort damages for conversion, tortious interference with business relationships and breach of fiduciary duty. At defendants' request, Murges changed the name of MBC to George J. Murges and Associates, Ltd. (GJM). Murges and GJM then filed an amended complaint on January 31, 1992.

Plaintiffs filed an emergency motion for TRO. On February 10, 1992, following a contested hearing, the trial court ordered defendants to deposit in a special bank account all settlement amounts and awards received for work on files taken from MBC offices. Only client awards, costs and attorney referral fees were to be distributed from the account; neither party could withdraw attorney fees. Defendants retained all of the 400 files for MBC's former clients who had sent letters designating Bowman and Corday as their new attorneys. Defendants delivered to plaintiffs all remaining files, but the trial court ordered both parties not to solicit any of MBC's clients until further order of the court. Thus, defendants represented former MBC clients who designated defendants as their attorneys in response to defendants' solicitation, but plaintiffs could not solicit the clients who had made no such designation of attorney. The trial court ordered plaintiffs to submit for court approval a letter to send clients.

On February 18, 1992, plaintiffs presented to the trial court a draft letter to send to clients. The trial court rejected the draft. Plaintiffs have not sought approval for any subsequent drafts, although they have mailed letters to clients.

Defendants moved to dismiss the complaint on grounds that GJM lacked legal capacity to sue because GJM and its predecessor, MBC, failed to obtain certificates of registration from our supreme court and without such a certificate neither GJM nor MBC was authorized to practice law. (134 Ill. 2d R. 721(c).) GJM subsequently obtained from the supreme court a certificate of registration as a professional corporation engaged in the practice of law.

On June 3, 1992, defendants filed an emergency motion to dissolve the TRO. Defendants argued that since the TRO had been in effect for almost four months, they had no access to funds they needed to represent their clients adequately. They asked the trial court either

to require plaintiffs to post bond, or to modify the TRO to release funds to defendants, if the trial court would not dissolve the TRO.

The trial court modified the TRO to permit defendants and plaintiffs each to withdraw 25% of the special fund, while the fund retained the remaining 50%. The trial court also directed the parties to distribute future receipts in the same proportion. The trial court indicated that the modification would allow the parties to use part of the funds earned as attorney fees pending decision on the preliminary injunction.

On July 8, 1992, defendants petitioned for a "change of venue based on [the trial] Court's actual prejudice and its prejudgment of this cause." The trial court denied the motion. Defendants again moved to dissolve the TRO, this time on grounds that plaintiffs had unclean hands because they sent solicitation letters to MBC clients without court approval, in violation of the TRO. The trial court decided to address the issue with the hearing on the preliminary injunction.

At the preliminary injunction hearing on May 19, 1992, defendants' attorney stipulated that Murges was president and defendants were officers of MBC, a corporation properly registered with the Illinois Secretary of State. Counsel clarified that defendants did not stipulate to registration with our supreme court. Plaintiffs accepted the stipulation.

Murges admitted that he presented defendants to clients as his partners. He admitted that he mailed letters without court approval to some clients who had not designated an attorney in response to defendants' solicitation. Murges argued that the letters only informed clients of funds received on their behalf, and he did not solicit a designation as attorney for these clients. Defendants sought to question Murges about his ability to handle all of the files if the trial court were to grant the requested relief of returning the files. The trial court disallowed the questions, ruling that defendants would not be required to return files of the clients who designated them as their attorneys.

On July 23, 1992, the trial court entered a "Memorandum of Opinion" (Memorandum) concerning the evidentiary hearing on the preliminary injunction. The trial court made several findings of fact, including the finding that MBC was formally a professional corporation in which the parties conducted themselves, to some extent, as partners. The trial court denied defendants' motion to dissolve the TRO, holding that plaintiffs' misconduct in sending letters to clients who had failed to designate a law firm in response to defendants' let-

ter was not sufficiently grave to justify denying plaintiffs' request for equitable relief. The trial court also found:

"Defendants breached their fiduciary duty to the Corporation by physically removing the client files and by sending notices (which included the new representation agreements authorizing corporate clients to be represented by Defendants in the future) to the clients regarding Defendants' withdrawal from the firm. The *method* chosen by Defendants was not evenhanded; it did not provide clients with sufficient information to make an informed choice; it created an illusory urgency that if indeed it existed at all was created by Defendants' own acts; and it did not give Plaintiff the opportunity to furnish its clients with an alternative explanation for the parting of the Plaintiff and Defendants which may have affected client decisions to continue to be represented by Plaintiff." (Emphasis in original.)

The trial court held:

"[I]t is not only necessary to enjoin the distribution of any gross attorney's fees now or hereafter awarded in regard to the approximately 600 files removed by the Defendants, but it is also necessary to appoint a receiver *pendente lite* to administer all funds collected from the client awards or settlements. The Court makes this appointment because, based on Defendants' past conduct, it cannot assure itself that the monies collected from the settlements or awards of removed files will be properly accounted for.

The Court views the attorney's fees generated from the illegally moved files as a special fund to which Plaintiff has a right to resort for satisfaction and possession. Further, the Court finds that the property taken by Defendants (client files, etc.) was obtained by fraud, and the income from said property (the fees from the files) is likely to be in imminent danger of dissipation if a receiver is not appointed to preserve the status quo."

The Memorandum finally provided:

"The Court appoints:

JOHN J. SULLIVAN
111 W. WASHINGTON

as receiver *pendente lite.* \*\*\*

The Court by further order will delineate the receiver's duties and obligations and, pending such order, the terms of the previously agreed temporary restraining order will remain in effect.

This matter is continued until August 4, 1992 at 10:30 a.m. for entry of a formal order for preliminary injunction and appointment of receiver *pendente lite.* Until then, the terms of the February 10, 1992 order remain in full force and effect."

Later the same day the court entered an order modifying the Memorandum, stating "The Court's order of July 23, 1992 is hereby modified and amended to reflect that the hearing set for August 4, 1992 is stri[c]ken and re-set to August 18, 1992 at 3:00 p.m."

The day after the trial court entered the Memorandum into the record and sent copies to the parties, plaintiffs' attorneys petitioned for instructions concerning whether distribution of settlement funds would continue according to the formula established in the order dated June 24, 1992, with 25% going to defendants, 25% to plaintiffs and 50% remaining in the special bank account. On July 28, as in the order resetting the hearing, the court and the parties consistently referred to the Memorandum as an "order." The trial court clarified:

"The purpose of the preliminary injunction order [(*i.e.* the Memorandum)] was not to distribute any fees other than the distribution to the client *** until further order of Court. No sooner than August 18th."

The trial court entered an order which defendants drafted to reflect two rulings that the trial court made in the course of the preliminary injunction hearing. The court denied plaintiffs' request for return of the files for clients who returned letters indicating their choice of Bowman & Corday to act as their attorneys. The trial court also denied injunctive relief for referrals to Bowman & Corday from attorneys who had previously referred clients to MBC. Defendants then appealed from the Memorandum.

Defendants contend that this court has jurisdiction to consider this interlocutory appeal pursuant to Supreme Court Rule 307(a), which provides:

"An appeal may be taken to the Appellate Court from an interlocutory order of court

(1) granting, modifying, refusing, dissolving, or refusing to dissolve or modify an injunction;

(2) appointing or refusing to appoint a receiver or sequestrator." (134 Ill. 2d R. 307(a).)

Defendants argue that the Memorandum is an order for a preliminary injunction, which appoints a receiver and modifies and refuses to dissolve the TRO, which is an injunction. Plaintiffs counter that the Memorandum is not an "order" within the meaning of Rule 307, and the trial court has not yet entered a preliminary injunction.

■ This court looks to the substance, not the form, of a trial court's acts to determine whether this court has jurisdiction to hear an appeal pursuant to Rule 307. (*Lake Shore Racquet Club, Inc. v. Fireman's Fund Insurance Cos.* (1980), 91 Ill. App. 3d 1118, 1121, 415 N.E.2d 625.) Our supreme court has defined an "order" as "any direction of a court other than a judgment or decree made in a cause." (*People v. Circuit Court* (1897), 169 Ill. 201, 215, 48 N.E. 717.) For an act to constitute an order or judgment, the court must have clearly intended it as such. See *Davidson Masonry & Restoration, Inc. v. J.L. Wroan & Sons, Inc.* (1971), 2 Ill. App. 3d 524, 526-27, 275 N.E.2d 654.

Here, the trial court in the Memorandum indicated that it would soon thereafter enter a further order that would be a formal preliminary injunction delineating the duties of the receiver *pendente lite*. However, the trial court in the Memorandum stated, without qualification, that it "appoints" John J. Sullivan as receiver. The trial court also stated that it is "necessary to enjoin the distribution of any gross attorney's fees," but in other respects the terms of the prior TRO remained in effect pending the formal order for preliminary injunction.

In an order entered the same day the court entered the Memorandum, the court referred to the Memorandum as an "order." At the hearing held less than a week after the trial court filed the Memorandum, both parties and the trial court referred to the Memorandum as an "order," and they sought clarification of the direction for the parties contained in the Memorandum. The court found that the Memorandum directed the parties not to distribute attorney fees, not even referral fees for nonparty attorneys, pending the trial court's formal preliminary injunction order, which it expected to enter at the hearing rescheduled to August 18, 1992.

Thus, the parties and the trial court treated the Memorandum as an order containing directions for the parties, although the trial court consistently indicated that it would later file a formal preliminary injunction order. The directions in the Memorandum only pertained to appointment of a receiver and continuation of the TRO, revised to restrict distribution of attorney fees pending the promised preliminary injunction. In substance, the Memorandum is an order modifying the TRO, denying defendants' motion to dissolve the TRO and appointing a receiver.

■ Defendants contend that the TRO has remained in effect for so long it is essentially a preliminary injunction and appealable as such. (See *Abdulhafedh v. Secretary of State* (1987), 161 Ill. App. 3d 413, 417, 514 N.E.2d 563.) "[A] temporary restraining order is equiv-

alent to a preliminary injunction only when it is issued with notice and is of unlimited duration." (*Stanton v. City of Chicago* (1988), 177 Ill. App. 3d 519, 523, 532 N.E.2d 464.) A court order which sets a specific date for hearing on a motion for preliminary injunction, and which sets terms of injunctive relief to be in effect "until further order of the court," indicates an intention to award a TRO rather than a preliminary injunction. (*Stanton*, 177 Ill. App. 3d at 524.) Also, when the trial court expressly states that a written order for preliminary injunction will be filed later, writings prior to the filing of the written order do not constitute the preliminary injunction, and they are not appealable as such. See *Loveless v. Loveless* (1972), 3 Ill. App. 3d 967, 971, 279 N.E.2d 531.

While the original TRO in this case has been in effect, with some modification, since February 10, 1992, the trial court in the meantime held several hearings to allow both parties to present their considerable evidence on the request for preliminary injunction. Due to the extended hearings on the preliminary injunction, the trial court modified the TRO to reduce the financial stress on the parties. The trial court apparently intended the modification of the TRO in the Memorandum, disallowing distribution of fees even to referring attorneys, to last no more than a few weeks, until the trial court entered the order for a preliminary injunction which would delineate the receiver's duties. The delay between the entry of the Memorandum and the promised date for the preliminary injunction is not so great as to render the Memorandum a preliminary injunction. (See *City of Chicago v. Westphalen* (1981), 93 Ill. App. 3d 1110, 1125, 418 N.E.2d 63.) The Memorandum is not, in substance, a preliminary injunction.

■■ This court has jurisdiction, under Rule 307(a)(1), to decide appeals from orders modifying TROs and from orders denying motions to dissolve TROs. (See *Emerson Electric Co. v. Sherman* (1986), 150 Ill. App. 3d 832, 837, 502 N.E.2d 414.) This court also has jurisdiction under Rule 307(a)(2) to decide appeals from orders appointing receivers. (134 Ill. 2d R. 307(a)(2).) However, this court's review is limited: "An appeal under Rule 307 does not open the door to a general review of all orders entered by the trial court up to the date of the order that is appealed." *Panduit Corp. v. All States Plastic Manufacturing Co.* (1980), 84 Ill. App. 3d 1144, 1151, 405 N.E.2d 1316.

In *Roche Brothers v. Garrigan* (1980), 88 Ill. App. 3d 107, 410 N.E.2d 338, the defendant quit working for the plaintiff, an accounting firm, and took some of the files of plaintiff's clients to his new office. The plaintiff sought a preliminary injunction to prevent defendant from working for plaintiff's former clients. The trial court found

in its order that the defendant violated his fiduciary duties to the plaintiff, but the trial court denied the request for an injunction because the harm to defendant of such an order outweighed the benefit to plaintiff. The appellate court found that it had jurisdiction over plaintiff's appeal from the order insofar as it denied the preliminary injunction, but the court did not have jurisdiction to consider defendant's cross-appeal from the finding that defendant violated fiduciary duties:

> "That finding did not constitute an appealable judgment. [Citation.] At a hearing on a complaint seeking a preliminary injunction the trial court should not decide the merits of the case. [Citation.] The court below heard evidence on the breach of fiduciary duty issue only to determine whether or not it should exercise its discretion in granting a preliminary injunction. At such a hearing all of the evidence on a particular issue need not necessarily be presented. The plaintiffs will have a later opportunity to present all their evidence on the defendant's alleged breach of fiduciary duty if they choose to pursue their legal remedies." *Roche Brothers*, 88 Ill. App. 3d at 111.

Thus, even when this court has jurisdiction under Rule 307 to review an order, it does not have jurisdiction to review findings of fact which do not affect the specific remedies for which the appeal is allowed. Accordingly, we will not address defendant's objections to the trial court's findings of fact except insofar as those findings determined the remedy granted in the Memorandum.

On this appeal from the Memorandum, this court has jurisdiction to decide only whether the trial court committed reversible error by refusing to dissolve the TRO, by modifying the TRO and by appointing a receiver.

The trial court should deny a motion to dissolve a TRO unless the moving party meets its "burden of alleging sufficient grounds to show an abuse of discretion by the court in its entry" of the TRO. (*People ex rel. Stony Island Church of Christ v. Mannings* (1987), 156 Ill. App. 3d 356, 362, 509 N.E.2d 572.) Before issuing a TRO, the court should find:

> "(1) the party seeking relief has a protectable right; (2) he will suffer irreparable injury if injunctive relief is not granted; (3) his remedy at law is inadequate; and (4) there is a likelihood that he will succeed on the merits." *Tierney v. Village of Schaumburg* (1989), 182 Ill. App. 3d 1055, 1059-60, 538 N.E.2d 904.

■ Defendants argue strenuously that MBC was a partnership, not a corporation, and MBC and GJM lack capacity to sue. The court should not impose any order in a case, including a TRO, unless there is a "plaintiff with the requisite interest to bring the suit." (*Edgewater Construction Co. v. Percy Wilson Mortgage & Finance Corp.* (1976), 44 Ill. App. 3d 220, 226, 357 N.E.2d 1307.) Defendants do not explain why Murges does not have the requisite interest to maintain this suit. Whether MBC was a professional corporation, as plaintiffs contend, or a partnership, as defendants contend, defendants owed fiduciary duties to Murges either as his partners (see *Couri v. Couri* (1983), 95 Ill. 2d 91, 98, 447 N.E.2d 334), or as officers of a corporation for which Murges was a shareholder (see *Wencordic Enterprises, Inc. v. Berenson* (1987), 158 Ill. App. 3d 913, 917, 511 N.E.2d 907). The trial court has the power to grant equitable relief to protect Murges' rights even if GJM lacks standing to sue.

Defendants in this appeal do not challenge the trial court's findings that Murges will suffer irreparable injury and that his remedy at law is inadequate. Murges has "raise[d] a fair question as to the existence of the right he claims" (*Mannings*, 156 Ill. App. 3d at 362), by presenting evidence that he formed either a corporation or a partnership with defendants, so they had fiduciary duties to him which they violated by soliciting employees to join a rival law firm and by using MBC's equipment and files to establish the rival law firm, all without notifying Murges. (See *Preferred Meal Systems, Inc. v. Guse* (1990), 199 Ill. App. 3d 710, 725, 557 N.E.2d 506.) Thus, plaintiffs adequately showed a likelihood of success on the merits. Defendants have not shown that the trial court abused its discretion by imposing a TRO to protect Murges' rights, even if MBC was not a corporation and GJM has no standing.

The only basis defendants advanced for the motion to dissolve the TRO which the trial court decided in this Memorandum was plaintiffs' violation of the order which disallowed solicitation of former clients. The trial court found that the violation was not so severe as to present grounds for denying equitable relief. On appeal, defendants have not argued that the trial court abused its discretion by failing to dissolve the TRO after plaintiffs mailed the letters which violated the TRO. Defendants have not shown that the trial court abused its discretion by failing to dissolve the TRO. See *Zurich Insurance Co. v. Raymark Industries, Inc.* (1991), 213 Ill. App. 3d 591, 572 N.E.2d 1119.

The trial court modified its TRO to disallow distribution of attorney fees earned on disputed files pending the preliminary injunction

and full delineation of the receiver's duties. Defendants have presented case law which indicates that an order permanently denying defendants fees earned for their work would be contrary to public policy. (See *O'Hara v. Ahlgren, Blumenfeld & Kempster* (1989), 127 Ill. 2d 333, 537 N.E.2d 730; *Corti v. Fleisher* (1981), 93 Ill. App. 3d 517, 417 N.E.2d 764.) In *Corti* the plaintiff, an attorney who left the defendant law firm, agreed with the defendant that defendant would give plaintiff all fees defendants earned for files plaintiff referred to defendant. The court found that the fee arrangement would encourage defendant to dispose of the files quickly without regard to the clients' interests. (*Corti*, 93 Ill. App. 3d at 524.) The court found the fee arrangement void because it violated public policy as reflected in Rule 2–107 of the Code of Professional Responsibility. 107 Ill. 2d R. 2–107 (current version at 134 Ill. 2d R. 1.5).

The modification of the TRO at issue here denies defendants access to fees earned on the contested files for a period of a few weeks, pending the permanent injunction. The defendants should not be motivated to disregard client interests by the relatively brief delay in receiving fees. The trial court, in imposing the TRO, sought to enforce the fee-splitting arrangement defendants had with Murges prior to defendants' acts which effectively ended the partnership or took the business of the corporation. The fee-splitting agreement between the parties here was permissible under Rule 1.5 of the Rules of Professional Conduct. (134 Ill. 2d R. 1.5; see *Saltzberg v. Fishman* (1984), 123 Ill. App. 3d 447, 462 N.E.2d 901.) Imposing the TRO to allow later enforcement of the agreement here, if the court finds such relief appropriate following trial on the merits, does not contravene *Corti*. This court cannot decide whether an order for preliminary injunction which more permanently deprived defendants of fees earned on contested files would violate public policy, because the trial court has not entered a preliminary injunction. Defendants do not show how this order disallowing access to fees for a brief period contravenes public policy or constitutes an abuse of discretion.

Finally, the trial court appointed a receiver *pendente lite*.

> "The appointment of a receiver rests largely within the discretion of the appointing court, the object being to secure and preserve the property for the benefit of all concerned, so that it might be subjected to such order as a court might render. *** Whether or not the appointment of a receiver is reasonable and not arbitrary, capricious and an abuse of discretion depends on the particular circumstances surrounding the case." *People ex*

*rel. Fahner v. Community Hospital* (1982), 108 Ill. App. 3d 1051, 1059, 440 N.E.2d 200.

■■ Here, the trial court based its appointment of a receiver on its finding that defendants, who breached their fiduciary duties to Murges, could not be trusted to accurately report attorney fees earned on disputed files. The trial court could not be assured that attorney fees to be distributed between the parties would be secured and preserved without a receiver *pendente lite* keeping track of the fees earned and received. Defendants do not argue that the finding was against the evidence or that the appointment of a receiver constituted an abuse of discretion.

The bulk of defendants' arguments do not address the issues properly before this court on the limited review under Rule 307 of the trial court's Memorandum. Defendants contend that the trial court's order of May 19, 1992, denying their motion to dismiss the complaint and ordering them to answer the complaint, was erroneous. This order is not final and appealable, and the appeal from a later order under Rule 307 does not give this court jurisdiction to review the prior order denying the motion to dismiss. *Rosinia v. Gusmano* (1980), 90 Ill. App. 3d 882, 887, 414 N.E.2d 21.

■■ Similarly, defendants argue that the trial court should have granted their motion for change of venue because the trial court was predisposed against defendants. The trial court denied the motion orally, in open court, at the hearing on July 15, 1992. The ruling is not incorporated into the Memorandum from which defendants appeal. This appeal does not give the court jurisdiction to review the denial of the motion for change of venue. See *In re Petition of Filippelli* (1990), 207 Ill. App. 3d 813, 818, 566 N.E.2d 412.

■■ Defendants argue that the trial court premised the grant of equitable relief on the conclusion that plaintiffs, not their clients, owned client files. The trial court found that defendants misappropriated client files from plaintiffs' offices in violation of their fiduciary duties to plaintiffs. While this finding implies that plaintiffs had a right to the client files which was superior to defendants' right to take them, the finding does not entail a finding that plaintiffs' right to the files was superior to the clients' rights. Defendants presented no evidence that the clients authorized the taking of the files before defendants took them. The trial court's orders allow clients to be represented by counsel of their own choice: all of plaintiffs' former clients who appointed Bowman & Corday to act as their attorneys are represented by Bowman & Corday.

■ In their reply brief, defendants argue that the equitable relief awarded in the Memorandum must be reversed because it is inconsistent with the later order directing a finding for defendants on plaintiffs' request for return of client files. The trial court disallowed questions concerning Murges' ability to handle the files based on the directed finding. Defendants maintain that the directed finding is inconsistent with the finding in the Memorandum that defendants misappropriated files from plaintiffs' offices.

The refusal to order return of the files does not conflict with the finding that defendants acted improperly, in violation of their fiduciary duties, when they took the files. The question which the trial court disallowed could have shown, at best, that Murges could not have handled the files on his own. The disallowed line of questioning could not produce evidence that defendants' acts of establishing a rival law firm and hiring all of plaintiffs' employees, while working either as officers or partners in MBC did not constitute breaches of fiduciary duties to Murges. (See *Preferred Meal*, 199 Ill. App. 3d at 725.) The refusal to return files is not inconsistent with the appointment of a receiver *pendente lite* and imposition of a TRO to permit later enforcement of the fee-splitting agreement.

Because defendants have not shown that the trial court abused its discretion by denying the motion to dissolve the TRO, modifying the TRO and appointing a receiver *pendente lite*, we affirm.

Affirmed.

HARTMAN and SCARIANO, JJ., concur.