# Illinois Official Reports

## Appellate Court

---

### *Zurich American Insurance Co. v. Personnel Staffing Group, LLC*,
### 2018 IL App (1st) 172281

---

| | |
|---|---|
| Appellate Court Caption | ZURICH AMERICAN INSURANCE COMPANY and AMERICAN ZURICH INSURANCE COMPANY, Plaintiffs-Appellees, v. PERSONNEL STAFFING GROUP, LLC; DANIEL S. BARNETT; and DASH MANAGEMENT, Defendants-Appellants. |
| District & No. | First District, Second Division <br> Docket No. 1-17-2281 |
| Filed | May 15, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 17-L-003729; the Hon. Thomas R. Mulroy Jr., Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Sperling & Slater, P.C., of Chicago (Greg Shinall, Thomas D. Brooks, and Nathan A. Shev, of counsel), for appellants. <br><br> Locke Lord LLP, of Chicago (Steven T. Whitmer, Julie L. Young, and Heidi L. Brady, of counsel), for appellees. |
| Panel | PRESIDING JUSTICE NEVILLE delivered the judgment of the court, with opinion. <br> Justices Hyman and Mason concurred in the judgment and opinion. |

**OPINION**

¶ 1    After Zurich American Insurance Company (Zurich) filed a demand for arbitration of its dispute with its insured, Personnel Staffing Group, LLC (PSG), Zurich filed a complaint against PSG and two other defendants, alleging that PSG fraudulently transferred funds to the other defendants to avoid paying an anticipated arbitration award. PSG filed in court a counterclaim that matched claims it raised in the arbitration. The Cook County circuit court denied the defendants' motion to compel arbitration of the fraudulent transfer claim, and it denied the defendants' motion to stay proceedings on the fraudulent transfer claims pending resolution of the arbitration. The court also dismissed the counterclaims to compel arbitration of those claims. The defendants now appeal.

¶ 2    We find that Zurich's complaint concerns collection of the arbitration award and the circuit court correctly held that the parties did not agree to arbitrate issues regarding collection of arbitration awards. Staying proceedings on the fraudulent transfer claims pending arbitration would conflict with the purposes of the Uniform Fraudulent Transfer Act (Act). 740 ILCS 160/1 *et seq.* (West 2016). The defendants concede that the parties agreed to arbitrate the issues raised in their counterclaims. Accordingly, we affirm the circuit court's order.

¶ 3                                    BACKGROUND

¶ 4    In 2011, PSG bought workers' compensation insurance from Zurich subject to a "Loss Retrospective Agreement" (Agreement), which provided that PSG would pay Zurich an amount that depended on the workers' compensation claims eventually filed against PSG for the covered period. The Agreement established that Zurich would handle the claims and then bill PSG for the paid losses. Because Zurich would initially pay the claims, it effectively loaned the payments to PSG. The Agreement referred to this aspect of the Agreement as a "risk financing arrangement," for which Zurich required collateral in the form of a letter of credit in "an amount sufficient to secure [PSG's] financial obligations under this Agreement." The Agreement also provided that "[a]ny dispute arising out of the interpretation, performance or alleged breach of this Agreement, shall be settled by binding arbitration."

¶ 5    For several years, PSG regularly paid Zurich the amounts Zurich billed, but disagreements arose, and PSG stopped reimbursing the full amounts demanded. In June 2016, the final policy term ended, and PSG bought insurance from another source. On December 1, 2016, Zurich filed a demand for arbitration to resolve its disputes with PSG. Zurich sought to recover more than $4.6 million for the retrospective premiums already due, and it sought a letter of credit in the amount of $39 million as security for future claims. PSG replied that Zurich had breached the Agreement by "engag[ing] in a pattern and practice of settling claims without regard for whether the settlements were reasonable," by "fail[ing] to properly investigate and manage claims," and by "failing to consult with PSG about settlements and reserve charges that exceed $10,000."

¶ 6    Before the arbitration hearing began, Zurich filed the complaint that initiated the lawsuit now before this court. Zurich named as defendants PSG, Dash Management, Inc. (Dash), and Daniel S. Barnett. Barnett, the "majority member" of PSG, owned Dash, and PSG paid Dash management fees. Zurich alleged that the defendants violated the Act in 2015, when PSG distributed $4.5 million to Barnett and paid Dash $5.8 million in management fees.

¶ 7    The defendants filed a "Motion To Dismiss or Stay or in the Alternative for Judgment on the Pleadings." They argued that either the circuit court should dismiss the lawsuit and compel arbitration of the fraudulent transfer claims or the court should stay proceedings on the fraudulent transfer claims until the arbitrators issue a final award. In the alternative, the defendants sought judgment on the pleadings, arguing that PSG's debt to Zurich did not arise until 2017 and, therefore, Zurich could not challenge the transfers PSG made in 2015. The defendants also filed a counterclaim that raised the same issues PSG raised in arbitration. Zurich filed a motion to compel arbitration of the counterclaim.

¶ 8    The circuit court set a date for hearing the "Motion To Dismiss or Stay or in the Alternative for Judgment on the Pleadings." Following the hearing, the court entered an order in which it (1) denied the motion to dismiss the lawsuit to compel arbitration of the fraudulent transfer claims, (2) denied the motion to stay proceedings on Zurich's complaint, (3) denied the motion for judgment on the pleadings, and (4) granted Zurich's motion to compel arbitration of the counterclaims. The defendants filed a notice of appeal.

¶ 9                                    ANALYSIS

¶ 10    Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2017) gives this court jurisdiction to decide this appeal. *MHR Estate Plan, LLC v. K&G Partnership*, 2016 IL App (3d) 150744, ¶ 15; *Robert A. Besner & Co. v. Lit America, Inc.*, 214 Ill. App. 3d 619, 623 (1991) (an order compelling arbitration is considered to be an appealable interlocutory order because it is injunctive). The circuit court considered only the pleadings and attached documents, deciding the issues as a matter of law. Therefore, we review the court's decision *de novo*. *Board of Managers of Chestnut Hills Condominium Ass'n v. Pasquinelli, Inc.*, 354 Ill. App. 3d 749, 753-54 (2004).

¶ 11                          Motion to Compel Arbitration

¶ 12    PSG argues first that the circuit court should have granted its motion to compel Zurich to arbitrate its fraudulent transfer claims against PSG because the claims "aris[e] out of the interpretation, performance or alleged breach of th[e] Agreement." We disagree. In its complaint, Zurich alleged that PSG transferred funds to Barnett and Dash to avoid paying a possible arbitration award. Zurich's complaint parallels the complaints filed in *Northern Tankers (Cyprus) Ltd. v. Backstrom*, 967 F. Supp. 1391 (D. Conn. 1997); *Ryan Racing, LLC v. Gentilozzi*, 231 F. Supp. 3d 269 (W.D. Mich. 2017); and *Apparel Art International, Inc. v. Jacobson*, Civ. No. 90-1756 (JAF), 1991 WL 641949 (D.P.R. Aug. 21, 1991), *aff'd*, 967 F.2d 720 (1st Cir. 1992). In *Apparel Art*, the plaintiff claimed that after it initiated arbitration of its claims against Amertex, "the principals of Amertex themselves, through family members and shell corporations, transferred virtually all assets from Amertex while the arbitration was proceeding as a way to frustrate plaintiff's attempt to collect on any award it might receive." *Apparel Art*, 1991 WL 641949, at *3. The *Apparel Art* court observed, "the fraudulent transfer claim is merely one aspect of plaintiff's attempt at collection of the judgment" entered on the arbitration award. *Apparel Art*, 1991 WL 641949, at *3. *Ryan Racing* and *Northern Tankers* also involved fraudulent transfer claims addressed in court as part of the plaintiffs' efforts to collect arbitration awards. *Ryan Racing*, 231 F. Supp. 3d at 275-76; *Northern Tankers*, 967 F. Supp. at 1394-95.

¶ 13    In *Geneva Corporate Finance v. G.B.E. Liquidation Corp.*, 598 N.W.2d 331 (Iowa Ct. App. 1999), the plaintiff won an arbitration award against the defendant and obtained a judgment on the award. The plaintiff then filed a fraudulent transfer complaint against the defendant in court. The defendant asked the court to dismiss the complaint as *res judicata*, arguing that the plaintiff could have pursued the fraudulent transfer claim in arbitration. The *Geneva* court held that the judgment on the arbitration award did not bar the fraudulent transfer claim because "the arbitration award established defendant corporation's liability under the listing contract and this action deals with collecting the judgment." *Geneva*, 598 N.W.2d at 334. We find that Zurich, like the plaintiffs in *Geneva*, *Apparel Art*, *Ryan Racing*, and *Northern Tankers*, brought the fraudulent transfer claim as part of an effort to collect an arbitration award.

¶ 14    Under the Uniform Arbitration Act (710 ILCS 5/1 *et seq.* (West 2016)), after a party obtains an arbitration award, the party must file a complaint in court for confirmation of the award. 710 ILCS 5/14 (West 2016); see *Windham v. Doctor's Associates, Inc.*, 127 A.3d 1082, 1086-87 (Conn. App. Ct. 2015). The court then decides issues related to enforcement and collection of the judgment entered on the award. 710 ILCS 5/14 (West 2016); see *Adam Martin Construction Co. v. Brandon Partnership*, 135 Ill. App. 3d 324, 326 (1985).

¶ 15    The defendants cite *Miller v. Flume*, 139 F.3d 1130 (7th Cir. 1998), as authority holding that the arbitrator should decide fraudulent transfer issues. In *Miller*, the defendant won an arbitration award against the plaintiffs, and a court entered a judgment confirming the award. The defendant then filed a second arbitration demand, alleging that the plaintiffs had fraudulently transferred assets to avoid paying the arbitration award. *Miller*, 139 F.3d at 1131. The plaintiffs filed a complaint to enjoin the second arbitration, which concerned only enforcement and collection of the original arbitration award. The *Miller* court found the fraudulent transfer claim arbitrable. The court emphasized that "the language of this particular agreement to arbitrate is quite broad, sweeping in not only claims that literally 'arise out of' the business of the firm (i.e., its buying and selling activities), but also claims that have a 'connection' with the firm's business." *Miller*, 139 F.3d at 1136.

¶ 16    The arbitration clause here, unlike the clause at issue in *Miller*, limits its scope to issues that arise out of the interpretation, performance, or alleged breach of the Agreement. The Agreement manifests an intention to adopt the usual arrangement: the arbitrator decides how much each party owes the other under the contract, and the court decides issues related to enforcement and collection of the arbitrator's award. We find that the issues surrounding the allegedly fraudulent transfers concern collection of the arbitrator's award and, therefore, they do not arise out of the interpretation or performance of the Agreement. The circuit court correctly denied the defendants' motion to compel Zurich to arbitrate its fraudulent transfer claims.

¶ 17                                    Motion to Stay

¶ 18    Next, the defendants argue that the circuit court should have stayed court proceedings pending issuance of the arbitral award. "The purpose of the Uniform Fraudulent Transfer Act is to prevent fraudulent transfers of property by a debtor who intends to defraud creditors by placing assets beyond their reach." *Yokogawa Corp. of America v. Skye International Holdings, Inc.*, 159 S.W.3d 266, 269 (Tex. App. 2005). In accord with the purposes of the Act, "[a] 'claim' under the Act may be maintained even though 'contingent' and not yet reduced to

judgment." *Cook v. Pompano Shopper, Inc.*, 582 So. 2d 37, 40 (Fla. Dist. Ct. App. 1991) (*per curiam*); see *Salisbury v. Majesky*, 352 Ill. App. 3d 1188, 1190-91 (2004). "[I]f automatically staying discovery and progression of [fraudulent transfer] claims was standard and a failure to do so an abuse of discretion, the goal of protecting creditors from wrongful asset transfers would likely be nearly entirely frustrated." *Friedman v. Heart Institute of Port St. Lucie, Inc.*, 863 So. 2d 189, 193 (Fla. 2003). We find that, in accord with the purposes of the Act, the circuit court correctly denied the motion to stay proceedings under the Act.

¶ 19                                    Motion to Dismiss

¶ 20        The defendants argue that the circuit court improperly ruled on their motion to dismiss under section 2-615 of the Code of Civil Procedure. 735 ILCS 5/2-615 (West 2016). The defendants asked the circuit court to dismiss the complaint on grounds that Zurich had no claim against PSG in 2015, when PSG made the transfers Zurich seeks to challenge. In this appeal, the defendants argue that the circuit court erred when it denied the motion for judgment on the pleadings because "[d]efendants did not have any opportunity to file a brief or make any argument" in support of their motion. However, defendants do not argue that the denial of the motion to dismiss the complaint qualifies as an order granting or denying an injunction. See Ill. S. Ct. R. 307(a) (eff. Nov. 1, 2017). In this limited appeal under Rule 307, we lack jurisdiction to address the denial of a motion to dismiss the complaint. See *Mund v. Brown*, 393 Ill. App. 3d 994, 996 (2009); *Murges v. Bowman*, 254 Ill. App. 3d 1071, 1080 (1993).

¶ 21                                    Counterclaims

¶ 22        Finally, the defendants contend that the circuit court erred when it granted Zurich's motion to compel arbitration of the counterclaims. The defendants admit that all of their counterclaims arose out of the Agreement and concern the amount due under the Agreement. None of the counterclaims involve collection of a possible arbitral award. Because the defendants admit that their counterclaims arose out of the Agreement, the circuit court correctly granted Zurich's motion to compel arbitration of the counterclaims.

¶ 23                                    CONCLUSION

¶ 24        Zurich and PSG agreed to arbitrate all claims arising out of the interpretation or performance of the Agreement, but they did not agree to arbitrate issues concerning collection and enforcement of an arbitrator's award. Because Zurich's fraudulent transfer claims concern collection of a possible award, the claims do not arise out of the interpretation or performance of the Agreement. The circuit court correctly denied the motion to compel arbitration of Zurich's fraudulent transfer claims. The court also correctly denied the motion to stay proceedings on the complaint pending arbitration. As the defendants conceded that the arbitrators have jurisdiction to decide their counterclaims, the circuit court correctly granted Zurich's motion to compel arbitration of the counterclaims. Accordingly, we affirm the circuit court's judgment.

¶ 25        Affirmed.